IN MATTER OF LEWIS M. TROUTMAN, IN CUSTODY OF
THE SHERIFF OF MONMOUTH.

1. If a fugitive from justice, for whose delivery a requisition is made by
the executive of the state from which he is such fugitive, be in actual con-
finement on criminal or civil process in this state, he cannot be delivered
up. The constitution and laws of the United States only refer to fugitives
at large. In such case, the requisition should be lodged with the sheriff,
whose duty it would be, upon the prisoner's discharge from his previous
arrest, to detain him thereon until notice could be given to the party pre-
senting the requisition.

This was on a *habeas corpus* issued to bring up the prisoner,
Lewis M. Troutman, who had been arrested on the twenty-first
of August by the sheriff of Monmouth, on a regular *capias ad
respondendum*, and was demanded as a fugitive from justice
under a warrant of the governor, issued upon a requisition
from the governor of Pennsylvania, dated August twenty-
second. The prisoner was brought up on *habeas corpus*, that
he might be discharged from detention by the civil process
to be delivered up as a fugitive.

The question was argued before Justice POTTS, at his
chambers at Freehold, where the writ was returnable, by Mr.
*Dayton*, Mr. *Randolph*, Mr. *Throckmorton*, and Mr. *Ryall*,
for the state of Pennsylvania, and by Mr. *Browning*, Mr. *Vre-
denburg*, and Mr. *Parker* for the plaintiffs in the civil suits.

POTTS, J. A *habeas corpus* was in this case allowed,
directed to Holmes Conover, Esq., high-sheriff of the county
of Monmouth, commanding him to have before me the body
of Lewis M. Troutman, detained in prison in the custody of
said sheriff, on the sixth day of September, instant, together
with the day and cause of his being taken and detained, &c.

In obedience to the command of the said writ, the said
sheriff produced the body of said Troutman before me at the
time and place mentioned, and the hearing was thereupon
postponed by me until the fourteenth instant, at the court
house in Freehold, at which time and place he again pro-

duced the body of said Troutman, together with his return to the said writ.

The sheriff returns in substance that he took the said Troutman on the twenty-first of August last, and that the causes of his being taken and detained are—

I. A writ of *capias ad respondendum* issued out of the supreme court of judicature of the state of New Jersey, at the suit of Stober, Bunting & Company, against said Troutman, in a plea of trespass on the case upon promises to their damage, eighteen thousand dollars, returnable the first Tuesday of November next.

II. Another writ of *capias ad respondendum*, issued out of the same court at the suit of Francis N. Buck, against said Troutman, in a plea of trespass on the case upon promises to his damage thirty-five thousand dollars, returnable at the same time, under which last writ he took said Troutman on the twenty-fourth day of August last, and still detains him.

III. He further returns that after he had received the first writ, he received the original warrant annexed to the return, dated August twentieth. That he arrested Troutman, first on the *capias*, and then under the warrant; and that on the twenty-third of August he received a warrant of same date, which he also served by reading it, &c., to the prisoner.

And he returns that he detains said Troutman in custody under and by virtue of said several writs and warrants, &c.

The warrants here spoken of were issued by a justice of the peace in this state, with a view to the arrest of the prisoner to await the requisition, and were superseded by the action of the state of Pennsylvania herself.

The return being read, Mr. *Ryall*, with whom is Messrs. *Dayton* and *B. F. Randolph*, present a copy of a *requisition* dated twenty-second of August, *made by the governor of Pennsylvania* upon the governor of New Jersey, for the delivery of the body of said Troutman, alleged to be a fugitive from justice in said state, to *William Russell*, who is duly authorized to receive and carry him to the state of Pennsylvania, to which is annexed a copy of an affidavit made by Stober, of the same firm, who are plaintiffs in the first men-

tioned *capias*, charging said Troutman with feloniously stealing, taking, and carrying away certain promissory notes, the property of said firm, on the eighth of August, in the city of Philadelphia.

Also, a certified copy of a warrant appointing said *Russell* the agent of Pennsylvania to receive said fugitive, &c., and take him to Pennsylvania.

They also present a duplicate *warrant from the governor of this state*, directed to the sheriffs, under-sheriffs, jailers, and constables of the several counties of this state, authorizing and requiring them to cause said Troutman to be delivered to *William Russell*, agreeably to the requisition of the governor of Pennsylvania, the receipt of said Russell to be their warrant for his delivery.

Depositions were also read, by which, among other things, it appeared that on the twenty-fifth of August, Russell presented himself to the jailer who had the custody of Troutman, with the requisition of Governor Bigler and the warrant of Governor Price, and after the jailer had read them, *Troutman*, by his counsel, tendered himself ready to go with the agent, and demanded that the jailer should deliver him up, but the jailer declined doing so, on the ground that the sheriff had ordered him not to do so until the *capias* was satisfied. That afterwards, Russell told the jailer *he did not demand Troutman then*, but wished him kept a reasonable time, in case the civil suit was arranged, and give him, Russell, notice, that he might come for him. The requisitions were left with the jailer, and subsequently given by the sheriff to Russell, who took them away, telling the jailer, as he understood, that *he withdrew them.*

These are the material matters touching this question, as they appear before me. They disclose the following facts:

I. That Troutman is in the custody of the sheriff of Monmouth under and by virtue of two writs of *capias ad respondendum* issued in civil suits. The writs have been duly issued, by a competent jurisdiction, are regular upon their face; have been served according to law, and the defendant is lawfully held by the sheriff under their authority.

II. That a requisition had been issued by the governor of Pennsylvania demanding said Troutman as a fugitive from justice in that state; and that the governor of this state, in pursuance of said requisition, has issued his warrant for the delivery of the fugitive.

III. That Russell, the agent appointed by the state of Pennsylvania to receive said fugitive and take him to Pennsylvania, and upon whose receipt the sheriff was directed to deliver him up, has declined to demand him, and has withdrawn with the requisition and warrant.

As the case stands, therefore, there is nothing to consider. Pennsylvania has a right to withdraw her requisition, and we must assume that her agent acts under her instructions. I certainly cannot look behind the acts of the agent, and undertake to say whether they are performed in good faith.

The prisoner must be remanded to the custody of the sheriff.

But I am asked to consider the question, whether, in case the prisoner shall be again demanded by a duly authorized agent of Pennsylvania, under the requisition and warrant already issued, or under a new requisition and warrant, he can be discharged from imprisonment under the civil process now in the sheriff's hands, in order that he may be delivered up to the state of Pennsylvania. And inasmuch as counsel at the bar, acting by authority of the attorney general of that state, intimate their dissatisfaction with the conduct of the agent, Mr. Russell, and their intention to press the requisition and demand for the delivery of the prisoner, I feel bound, out of courtesy to them, and respect for the public authority they represent, frankly to state the views I entertain.

There is no doubt as to the obligation of a state to deliver up fugitives from justice, on demand of the executive authority of any other state. The duty is enjoined by the constitution of the United States, and the mode in which it is to be performed is provided by act of Congress. These constitute the supreme law of the land, to which implicit

obedience is due. *Constitution U. S., art.* 4, *s.* 2; *art.* 6; 2 *Laws U. S.* 165, *Feb.* 12, 1793.

But neither the constitution nor the law of Congress makes provision for a case of conflicting jurisdiction like the present. The former simply declares that, " on demand of the executive authority of the state - from which he fled," the fugitive "shall be delivered up." And the act provides that upon the proper demand being made, " it shall be the duty of the executive authority of the state or territory to which such person shall have fled, to *cause him or her to be arrested and secured*, and notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear."

The ordinary case of a fugitive *at large*, is manifestly contemplated by the act.

In this case the requisition of Pennsylvania *found the fugitive in prison in this state*, held to answer in civil suits instituted against him in our own tribunals. Our own laws have a claim upon him which was enforced against his person before Pennsylvania demanded him to answer the charge made against him there. Which jurisdiction, under these circumstances, must yield precedence?

One thing is obvious. If New Jersey is to yield—if the prisoner is to be discharged—if he is taken out of our jurisdiction without any security for his return—we can never reclaim him. He is held here to answer to civil suits, and we cannot hereafter require a foreign authority to deliver him up to us to answer these.

On the other hand, when he shall have satisfied the demand the law makes upon him here—when he has paid the debt which is demanded, or successfully defended himself against the claim made upon him—he can be delivered up to Pennsylvania to make atonement to her violated laws, if found guilty of the charge made against him there.

It may be said that here the prisoner is entitled to his discharge on giving the required bail; and that he may in

In Matter of Troutman.

demnify his bail and escape. But from the moment the prisoner is discharged from actual confinement, there is nothing to prevent the enforcement of the requisition which may be lodged with the sheriff, who will still hold him under it until notice can be given to the proper authority in Pennsylvania. This may be a hardship upon the prisoner. It may prevent his obtaining bail for his enlargement, but that cannot be helped. The laws must be enforced, even though individuals may suffer.

The language of the constitution, I admit, is absolute and peremptory. The fugitive shall be delivered up on demand. But the constitution and the laws alike, must have a reasonable construction.

I. And in the first place I take it to be clear, that if the prisoner was held in custody here to answer a *criminal charge*, Pennsylvania could not be permitted to take him out of our jurisdiction until he had made satisfaction to our laws. If in confinement under a charge of *murder* here, we should not deliver him over to Pennsylvania under a requisition up on a charge of *larceny* there. The constitution contemplated no such absurdity.

Then, though as a general rule the fugitive is to be delivered up on demand, yet *the rule is not without exceptions.*

The case where the fugitive is confined on a criminal charge in the state to which he has fled, is one of these exceptions. Suppose him to have been already convicted of crime and undergoing a sentence in the penitentiary for years or for life, or under sentence of death. These would also be exceptions to the rule. The constitution certainly never contemplated that a fugitive should be delivered up under such circumstances.

II. Then, in the second place, do not the exceptions extend also to cases where the fugitive is imprisoned, in the state to which he has fled, under *civil process ?*

The general proposition, that where criminal and civil proceedings come in conflict, the criminal process takes precedence ; that the rights of individual suitors are subordinate to the rights of the public ; that the state takes prior-

ity over the citizen; that public justice is superior to private interests, may all be very true, but these are principles applicable only within the state or sovereignty itself. They do not reach the question of inter-state or national obligations and duties.

And so as to another general proposition insisted on, that the proceedings which were first commenced must control the case. This is true, within the territorial sovereignty in which the conflict arises. In the case of *Jenkins, Am. L. Reg., Jan.,* '54, *p.* 146, Justice *Grier* says, " Where *persons* or property are liable to seizure or *arrest* by the courts of the United States and of the state, that which first attaches should have the preference. Any attempt of either to take them from the legal custody of the officers of the other, would be an unjustifiable exercise of its power, and lead to the most deplorable consequences. Therefore if a person be imprisoned under the *civil* or criminal process of one, the other cannot take him from such custody, in order to subject him to punishment for an offence against them. *A fugitive cannot be taken from the legal custody of the sheriff by any warrant from the courts of the United States, in order to extradition under the acts of Congress.* Neither can such fugitive, when in custody of the marshal, under legal process from a judge or commissioner of the United States, be delivered from such custody by means of a *habeas corpus*, or any other process, to answer for an offence against the state, whether felony or misdemeanor, or for any other purpose." But here is no conflict between federal and state jurisdictions in the same territory. The question, and the only question, is, whether, under the provisions of the federal constitution and the act of Congress respecting fugitives from justice, one state is bound to surrender, upon the requisition of another, a fugitive who is, at the time of the demand or requisition made, already in the custody of the law, held to respond to the claim of a party who sues in the courts of the state of which he is demanded?

Even if there was anything in the question, which prosecution was first instituted, I think it against the prisoner.

I can look only at the action taken in and by the state of Pennsylvania against him. The affidavit under which the *capias* first issued in this state was made on the 19th and filed on the 21st of August. The affidavit charging the crime under which the requisition in this case issued was made on the 22d of August. The defendant was arrested by virtue of the *capias* on the 21st of August, and the requisition of the governor of Pennsylvania was issued on the 22d, and the warrant for the arrest and delivery was issued by the governor of New Jersey on the 25th of August. So that the prisoner was in custody in the civil suit in New Jersey, before he was actually charged, judicially, with the offense for which he is demanded in Pennsylvania.

If, in point of fact, the prisoner had been first arrested on the requisition, the civil process would undoubtedly have been too late. For I should then have considered him as the prisoner of that state, and not liable to be taken from her custody by any process issuing out of our courts.

But I return from this digression to the real question in the case. When the requisition comes, it finds the fugitive in the custody of the law, held to answer in a civil suit for damages. He is detained in prison for a lawful cause. It so appears by the sheriff's return to the *habeas corpus*. I have no power to order his discharge unless the service of the requisition and warrant *makes his further imprisonment here unlawful.*

Does it do so? Was that the intention of the framers of the constitution? Is that the effect of these proceedings under the act of Congress? I cannot think so.

The act of Congress which provides the mode in which the constitution is to be carried into effect, may be looked to as an exposition of the meaning of the provision of the constitution itself. That act certainly does not contemplate the case of a prisoner in confinement for debt or crime in the state to which he has fled, or one held in the custody of the law in a civil suit or under a criminal charge. It requires the executive to cause the fugitive to be " *arrested and secured,*" &c. If it had been within the contemplation

of the act, that the fugitive should, by force of its pro-
visions, be wrested from the grasp of the law in the state to
which he had fled, and where he was held in custody to
answer charges made against him there, it is reasonable to
suppose that some provision would have been made for his
return, at least, when the laws of the state demanding him
should be satisfied.

For upon general principles where a party has made him-
self amenable to the laws, or has incurred obligations, in
several states, he is equally bound to answer in each of
them—each have an equal claim upon him—and the state
which first lays hands on him has the prior right to hold
him until her demands are satisfied.

The act, as I have already said, contemplates, in my
opinion, the case of fugitives at large only so far as it re-
quires an immediate delivery.

But still, I hold that the state authorities are bound to
carry out, in good faith, the spirit of the constitution and
the law. And as soon as the demands of the law to the
personal custody of the prisoner are satisfied—as soon as
he is enlarged by operation of law—no further objection
exists to his surrender; and in order that he may not
escape, if the proper documents are deposited with the
sheriff having him in custody, it will be his duty to give
notice to the authorities of Pennsylvania, in order that they
may take him in charge.

Governor Fort, I understand, took the same view of the
constitutional obligation of the state, which I have taken,
in the case of Smith, for whom a requisition was received
during his administration, from the governor of Maryland.
Governor Fort issued his warrant for the delivery of the
fugitive. But ascertaining afterwards that Smith was con-
fined in jail in Sussex county, charged with a crime commit-
ted in that county, he withdrew the warrant, and informed
the executive of Maryland of the circumstances under which
it was withdrawn, claiming that the fugitive must first
answer to the laws of the jurisdiction which had him in

In Matter of Troutman.

custody, before we were bound to deliver him up to the state from which he was a fugitive.

And even if I believed I had authority to discharge the prisoner here, I would not do it until Governor Price should be apprised of the facts, and had an opportunity of re-considering his action in the premises. His warrant was, no doubt, issued without the knowledge of the fact that the fugitive was in custody under civil process in this state.

It struck me upon the argument as a serious question, and I have not been able to get clear of the difficulty, that even if the requisition and warrant were of paramount authority, yet that it must be enforced in some other way than by application for the prisoner's discharge on *habeas corpus.* I can only, upon this writ, look into *the causes of the prisoner's detention,* and if I find them legal, my duty, it seems to me, compels me to refuse a discharge. It is not for me to enforce an executive requisition, or order, upon such a hearing as this. I cannot order the prisoner to be delivered up. Where is my authority to do so ?

But it is said I must discharge him to the end that he may be delivered up.

But I ask by what authority ? He is before me for a single purpose, and that purpose is to look into and decide upon the question whether he is legally or illegally imprisoned. The legislature has not delegated to me the power to determine, on *habeas corpus,* at chambers, what is the force and effect of an executive requisition ; has not authorized me to say whether it operates to render the imprisonment illegal or not. The power to do so may reside somewhere, but I am unable to assure myself that it resides in a single judge, sitting at chambers, and upon a writ like this.

Upon the whole, I am prepared to say that a further prosecution of this application would be unsuccessful.