Bert STRAND, Sheriff of San Diego County, State of California, Appellant,

v.

William SCHMITTROTH, Appellee.

No. 14733.

United States Court of Appeals Ninth Circuit.

June 24, 1957.

Writ of Certiorari Dismissed Dec. 3, 1957. See 78 S.Ct. 258.

See also 235 F.2d 756.

James Don Keller, Dist. Atty., San Diego County, Claude B. Brown, Deputy, San Diego, Cal., for appellant.

Edmund G. Brown, Atty. Gen., State of California, Clarence A. Linn, Arlo E. Smith, Deputy Attys. Gen., State of California, for appellant.

Oscar F. Irwin, San Diego, Cal., for appellee.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, James T. Barnes, Los Angeles, Cal., for U. S. A., amici curiæ.

Before DENMAN, Chief Judge, and STEPHENS, HEALY, POPE, LEMMON, FEE, CHAMBERS, BARNES and HAMLEY, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This case portrays the effort of a felon in virtue of his conviction of serious crimes against the United States to seek sanctuary, because of that conviction and sentence, from prosecution by the State of California for offenses charged to have been committed by him against members of that community. The United States District Court freed Schmittroth, upon his own petition, from the physical custody of the state officer who was holding him for trial, and released him to continue his depredations under federal protection among people of the very state which had been enjoined from prosecuting him. This appeal from the order of release is brought by the Sheriff in the interest of law enforcement by California.

This cause was heard first by a panel of this Court and presently by the Court en banc at the request of two judges of the original panel. As a result, we hereby withdraw and cancel the original expression in this case[1] and substitute this opinion therefor.

The facts are simple. Schmittroth was charged by the first complaint filed in the state court on September 15, 1953, with uttering checks bearing a false name. The offense is alleged to have occurred on August 27, 1953. In January, 1955, before the United States District Court, Schmittroth pleaded guilty to a federal criminal charge of transporting a false security in interstate commerce, apparently committed after the acts charged in the complaint in the state court. A sentence of ten years imprisonment was imposed. Thereupon, execution of the sentence was suspended and he was placed on probation by the federal court for five years and released from physical custody. The probation order is entitled "United States District Court for the Southern District of California." It provides for supervision of Schmittroth by the probation officer of that District, and contains the clause: "The Probation officer will arrange to transfer supervision to the Northern District of California at your convenience." During the period of probation, the United States District Court for the Southern District of California "may issue a warrant and revoke probation." The order further provides: "You are subject to arrest by the probation officer without a warrant."

After Schmittroth had been released from physical custody by the federal court upon the probation order above outlined, he was arrested by the Sheriff[2] on the previous state complaint above mentioned. Thus the body of Schmittroth was taken into manual possession by authority of the State of California and remained so during the following events. While so held, Schmittroth caused to be filed in the same federal court which had released him previously a petition for a writ of habeas corpus. An order to show cause was issued to the Sheriff, who filed return. Upon hearing, an order was issued by the United States District Court, command-

1. Strand v. Schmittroth, 9 Cir., 233 F.2d 598.
2. Where the "Sheriff" is mentioned throughout this opinion, the word "designates Bert Strand, Sheriff of San Diego County, appellant herein.

ing the Sheriff to release the prisoner. Schmittroth was released. After other proceedings, a final order was entered and this appeal was filed.

Two technical matters must be disposed of here. First, the timeliness of the appeal should be determined. Second, the claim that the issue is moot must be settled.

■ The appeal was timely. Although Schmittroth was actually released on February 17, 1955, as a result of the direction of the court, final judgment based upon findings of fact and conclusions of law was not entered of record until March 11, 1955. Such a final entry was contemplated and directed by the court upon the date of release. The notice of appeal filed March 16, 1955, covered both order and the judgment and was timely.[3] Besides, appeal could be taken from the later judgment, at the date of the notice, if the entry were void.

■ It is suggested that this appeal cannot be reconsidered, since this Court has been advised that Schmittroth has been arrested, tried an convicted for an offense subsequent to any here involved by the State of California and is now in custody under a valid state commitment at Folsom Prison. But the federal trial judge, before whom this habeas corpus proceeding was presented, took the position that Schmittroth was immune from state prosecution or imprisonment so long as he remained on probation from the federal court. If this position were correct, habeas corpus would now lie to free Schmittroth from Folsom. Likewise, the prosecution of the charge from which the United States District Court freed him in this proceeding, would be, enjoined as long as Schmittroth remained a federal probationer. The cause is not moot.

The merits of the cause will now be considered. This general subject has been treated in a number of decisions with disregard of the fundamental principles. Utter confusion in the authorities has resulted. To attain clarity, an analysis of the basic doctrines will be made and conclusions drawn therefrom, in order to give scope to an authoritative pronouncement.

In the proceeding brought by Schmittroth, the United States District Court went upon the theory that the state court could not prosecute or incarcerate him without obtaining the consent of the federal court which had freed him on probation and of the United States. The United States District Court concluded (1) that petitioner had a right therein to a petition for a writ of habeas corpus, there to question the legality of his confinement by the state, (2) that petitioner was incarcerated by the state "without any jurisdiction over the body of petitioner in violation of petitioner's constitutional rights," and (3) that petitioner was "in the exclusive jurisdiction of the United States, subject to the orders of the United States Probation Department for the duration of petitioner's probation."

The emphasis of this recital is placed upon the lack of authority and jurisdiction of the state court. This point will therefore be first considered. However, it must never be forgotten that the jurisdiction of the United States District Court is the decisive factor in this case. If that tribunal had no power to entertain the petition, it would be of no consequence whether the state courts were proceeding without authority.

In reviewing the position of one of two sovereigns in a contest over the right to try or incarcerate an alleged offender against each, three factors may have great weight, severally or cumulatively, in various situations. These are (a) consent of one sovereign, (b) the doctrine of comity between courts of separate sovereigns, and (c) actual physical possession of the body of the supposed offender by officers of one sovereign.

Consent may play such a role in a contest over the right to prosecute and pun-

---

3. On this point, we adopt the reasoning of the prior opinion in this case. Strand v. Schmittroth, 9 Cir., 233 F.2d 598, 600-602.

ish an alleged offender that a meticulous analysis of this element is required.

The consent of the accused is of no consequence. His acquiescence, approval or resistance cannot affect the choice of the forum.[4] His consent while in physical custody of another sovereign cannot confer jurisdiction upon any tribunal. Refusal upon his part to participate in the proceedings against him in any court is of no avail.[5] It is assumed that he is unwilling to be prosecuted anywhere. Physical presence of defendant at all criminal proceedings is an almost universal requirement in American courts.[6] Such presence is obtained and generally assured by arrest and confinement, which is absolute, or by release on bail, which does not guarantee the physical presence, but which may be revoked in order to secure physical presence.

The accused is the unwilling actor.[7] All the proceedings are without his consent and over his protest. Where two sovereigns each claim the right to proceed against him, the respective officers dispose of the matter without consulting him. He has no right or privilege to be consulted or heard.[8] In practice, he is not consulted, since it is properly assumed that the sovereigns only are concerned with disposition of the criminal charges.

■■ It is well established that a sovereign, which has the paramount right to proceed with trial and sentence and which at the same time has custody of a defendant, may yield up the body to another sovereign and consent to trial of the defendant upon a subsequent charge by the latter and, of course, upon a prior charge. Likewise, where the defendant in a proceeding in a tribunal is a parolee, probationer or on bail from another jurisdiction and court, the sovereign in whose court the right to proceed is lodged by possession of the body or otherwise may nevertheless yield to the officers of another sovereign.

Actual consent of one sovereign, whether express or implied, to proceedings in another forum wipes out all distinctions and is conclusive of all questions. If consent can be found, there need be no search for other and perhaps better grounds. Abstruse reasoning into bases of jurisdiction and similarly difficult propositions is avoided. Many opinions reach the correct result upon this ground and thereby slur the actual basis of the decision.[9]

4. "It is a matter of indifference to the criminal." Banks v. O'Grady, 8 Cir., 113 F.2d 926, 927.

5. See Ker v. People of State of Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421, where the accused was forcibly extradited from a foreign country and the jurisdiction of the state court was upheld. The Supreme Court held the presence of accused in the foreign country conferred no right of sanctuary upon him. "* * * in that transaction we do not see that the Constitution, or laws, or treaties, of the United States guaranty him any protection" from trial in the state court.

6. "It, of course, was essential that the state court have jurisdiction of the persons of the accused. In fact, they were before it and were accorded full opportunity to defend." Hebert v. State of Louisiana, 272 U.S. 312, 315, 47 S.Ct. 103, 104, 71 L.Ed. 270.

7. "There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 512, 96 L. Ed. 541.

8. Ponzi v. Fessenden, 258 U.S. 254, 260, 42 S.Ct. 309, 66 L.Ed. 607.

9. Cato v. Smith, 9 Cir., 104 F.2d 885, certiorari denied 308 U.S. 608, 60 S.Ct. 177, 84 L.Ed. 508; United States ex rel. Buchalter v. Warden of Sing Sing Prison, 2 Cir., 141 F.2d 259; Commonwealth v. Domanski, 332 Mass. 66, 123 N.E.2d 368 (federal consent to state proceedings); Banks v. O'Grady, 8 Cir., 113 F.2d 926 (state consent to another state's proceedings); Gunton v. Squier, 9 Cir., 185 F. 2d 470; Kirk v. Squier, 9 Cir., 150 F.2d 3, certiorari denied 326 U.S. 775, 66 S. Ct. 265, 90 L.Ed. 469; Werntz v. Looney, 10 Cir., 208 F.2d 102; Lunsford v. Hudspeth, 10 Cir., 126 F.2d 653; Zerbst v. McPike, 5 Cir., 97 F.2d 253 (state consent to federal proceedings).

A number of like cases go further and

■ The consent of the sovereign which has no paramount right to proceed and which does not have actual physical possession of the body is of no consequence. But, if given, the consent carries with it the right of the other tribunal to proceed, if the latter has jurisdiction.[10]

discuss the fundamental basis of the jurisdiction of the sovereign which acquires the body of the accused from the consenting sovereign. In Ponzi v. Fessenden, 258 U.S. 254, 265–266, 42 S.Ct. 309, 312, the court said: " * * * it is argued that when the prisoner is produced in the superior court, he is still in the custody and jurisdiction of the United States, and that the state court can not try one not within its jurisdiction. This is a refinement which if entertained would merely obstruct justice. The prisoner when produced in the Superior Court in compliance with its writ is *personally present*. He has full opportunity to make his defense exactly as if he were brought before the court by its own officer. [Citing case] The trial court is given all the *jurisdiction needed to try and hear him by the consent of the United States*, which only insists on his being kept safely from escape or from danger under the eye and control of its officer." (Emphasis added.) Likewise, in Stamphill v. Johnston, 9 Cir., 136 F.2d 291, 292, certiorari denied 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457, while noting that state consent to federal proceedings effected by "surrender" of the body, "in effect gave the federal court jurisdiction to try" appellant, this Court further pointed out that the "personal presence of a defendant before a District Court gives that court complete jurisdiction over him, *regardless of how his presence was secured*, * * * the federal authorities had *actual possession* of the appellant during his trial in the federal court. Jurisdiction resulted from that possession." (Emphasis added.) See also United States ex rel. Moore v. Traeger, 9 Cir., 44 F.2d 312.

10. There are several cases which would appear to turn on this ground. See Stripling v. United States, 10 Cir., 172 F. 2d 636, and Rosenthal v. Hunter, 10 Cir., 164 F.2d 949, in both of which the court presumed that there was consent by another sovereign (a state) permitting the trial of parolees of that sovereign, in the federal court of another state, in the absence of a showing of *lack of such consent*. Rawls v. United States, 10 Cir., 166 F.2d 532, certiorari denied 334 U.S. 848, 68 S.Ct. 1498, 92 L.Ed. 1771, similarly presumes consent as between federal and state sovereigns of concurrent territorial jurisdiction, in the absence of any showing that the state *objected*. Flourre

v. United States, 6 Cir., 217 F.2d 132, concerned a defendant wanted for parole violation by Michigan. To a claim that the Ohio District Court had no jurisdiction, the court replied that the paroling state had made *no objection*. See also United States ex rel. Lombardo v. McDonnell, 7 Cir., 153 F.2d 919, certiorari denied United States ex rel. Durkin, 328 U.S. 872, 66 S.Ct. 1365, 90 L.Ed. 1641. In upholding the power of a Texas District Court to try an escapee from a Washington (state) prison, the court construed a detainer filed by the Washington authorities as "*acquiescence*." Craig v. Hunter, 10 Cir., 167 F.2d 721, 722. In United States ex rel. Pasela v. Fenno, 2 Cir., 167 F.2d 593, 596, certiorari dismissed on stipulation of counsel, 335 U.S. 806, 69 S.Ct. 29, 93 L.Ed. 363, it is said, discussing the power of a court-martial to try a federal probationer, that no "*objection*" was made by the District Court. United States ex rel. Spellman v. Murphy, 7 Cir., 217 F.2d 247, 250, makes the same point regarding trial by the state of a federal probationer, while United States ex rel. Demarois v. Farrell, 8 Cir., 87 F.2d 957, 962, certiorari denied 302 U.S. 683, 58 S.Ct. 31, 82 L.Ed. 527, on like facts, notes that the federal authorities "*permitted*" the state sentence to run. In each one of these cases, the sovereign, held to have agreed in one way or another to proceedings by the other sovereign, did not have physical possession of the body of the accused. On the other hand, the second sovereign did have such physical possession. The decision is correct in each instance. And, if consent can be found, no further ground is necessary. But each could be upheld if the opinion had stated no consent was required.

The physical custody of the body alone was essential. Consent, or lack of it, was immaterial. Indeed, the opinions in United States ex rel. Pasela v. Fenno, supra, and United States ex rel. Spellman v. Murphy, supra, expressly recognize this view, although the safer ground of consent buttresses the decision.

"Conceptualism is satisfied in that situation by finding an implied consent on the part of the state authorities to the limitation, suspension of cessation of their custody as the circumstances indicate." United States v. Schurman, D.C., 84 F. Supp. 411, 414.

The next element which has weight in a conflict between the courts of diverse sovereigns contesting for the power to proceed against a person accused by each is the doctrine of comity. Where jurisdiction exists in the court and the res is in manual possession of the officers thereof, the tribunal may, in order to prevent unseemly conflict, yield to another court which has given prior consideration to the subject. The exercise of comity is an affirmance by the court which practices such self denial of its jurisdiction and power to proceed in the premises. It constitutes a refusal to exercise jurisdiction.

In Taylor v. Taintor, 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287, a situation very interesting in the development of this theme is presented. There a prisoner held under an information in Connecticut was released on bail and permitted to go to New York, where he was arrested on a warrant from Maine. The Governor of New York honored the requisition of Maine. The accused was taken to Maine, where he was tried, convicted and imprisoned. The sureties were held liable on the bond given to the Connecticut court. It is held that, although the sureties might have arrested the accused in New York, nevertheless, once the Governor of that state had manual possession of accused, there was no method of questioning the decision of that official. Likewise, when the officials of Maine came into possession of accused, Connecticut was powerless to intervene.

It was, however, suggested that the Governor of New York might well have yielded possession of the accused to the sureties had they requested it. The implication from this is that the authority to retain possession was absolute, but that the sovereign in possession might have followed the "rule of comity."

Analysis of opinions upon the subject indicates that the "rule of comity," spoken of in the arguments in this case,

means nothing more than voluntary consent of the officials or courts who have jurisdiction over the accused given to another court or sovereign to proceed against the accused in a different forum. This case makes it entirely clear that the power lay with the courts or officials who had possession of the body. But it did recognize that they could yield to another sovereign without the consent of the prisoner. In this sense, comity is only a phase of consent by one sovereign to acts by another. Most of the problems of this field are worked out by executive and administrative officers of the various states without conflict. It is probably rare that one sovereign, if requested, does not yield to prosecution by another.[11] But there are many limitations.

However, there must be some thread running through all the decisions whereby the conclusive effect of consent is explained and the so-called "rule of comity" properly limited. There is no doubt this controlling factor exists, otherwise the opinions cannot be brought together in the fog of confusion of language which exists. In a dictum in the Taylor case, 83 U.S. at page 370, it is said regarding interaction of competing sovereigns:

"Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is full performed and the jurisdiction invoked is exhausted; and this rule applied alike in both civil and criminal cases. Hagan v. Lucas, 10 Pet. 400, 9 L.Ed. 470; Taylor v. Carryl, 20 How. [583] 584, 15 L.Ed. 1028; Troutman's Case, 4 Zab. 634; Ex parte Jenkins, 2 Am.Law Reg. 144. It is indeed a principle of universal jurisprudence that where jurisdiction has attached to person or thing, it is (unless there is some provision to the contrary) exclusive in effect until it has wrought its function." [12]

---

11. But it does happen. People v. South, 122 Cal.App. 505, 10 P.2d 109.

12. Attention should be drawn to the fact that, in three of the cases cited in support of these principles, the first sovereign "got" jurisdiction by means of actual physical custody, as far as the circumstances permitted, and retained it against

It must be remembered that, at the time this opinion was written, physical possession after sentence was the rule. The extension of this language to supposed or assumed custody on probation has caused the great confusion.

The doctrine of cases in rem is thus applied in this field.[13] Thereby the cases whereby the sovereign in possession must consent before proceedings can be brought in another jurisdiction are explained. The corollary that consent of a sovereign not in possession of the body of the accused is entirely immaterial is also established thereby.

■ As is pointed out in the brief of the United States Attorney, amicus curiae, since the court of one sovereign thus has possession of the res and has the power to proceed and adjudicate, neither the courts nor the officers of another sovereign have authority forcibly to remove the res. As courtesy cannot be enforced, neither can comity.[14] Thus the court of one sovereign cannot compel the exercise of comity by the court of a different power.

The appellate courts of one sovereign may perhaps compel the trial courts of the same system to practice comity by reversal or remand.[15] But, if the officers of one sovereign desire the exercise of comity by the court of another, they must pray therefor in the forum of the latter.

However, yielding through comity constitutes consent. When jurisdiction is abjured by such means all other questions are wiped out once a court has yielded the res to the adjudication of another tribunal.[16]

If the principles heretofore discussed are applied between states of the union, these will be clearly defined as powers and limitations of a field of international law. Supremacy in a particular area is

the claim of the second sovereign. Hagan v. Lucas, 10 Pet. 400, 35 U.S. 400, 9 L.Ed. 470 (prior state custody of slaves: no federal levy); Taylor v. Carryl, 20 How. 583, 61 U.S. 583, 15 L.Ed. 1028 (prior state seizure of vessel: no federal seizure); In re Troutman's Case, 24 N.J.L. 634 (Pennsylvania fugitive imprisoned in New Jersey: no surrender—dictum). Ex parte Jenkins, 2 Am.Law Reg. 144, although containing applicable dictum, is not in point, since it concerns the discharge on federal habeas corpus of a federal officer, who was in state custody as a result of his efforts to execute a federal warrant for a fugitive slave.

13. A clear example of such application is found in Ponzi v. Fessenden, 258 U.S. 254, 261, 42 S.Ct. 309, 311, where principles expressed in Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355, 28 L.Ed. 390, a replevin action, were followed, the court saying: "The Heyman Case concerned property, but the same principle applies to jurisdiction over persons as is shown by the great judgment of Chief Justice Taney in Ableman v. Booth, 21 How. 506, 16 L.Ed. 169, quoted from, and relied upon, in Covell v. Heyman."

14. In United States ex rel. Moses v. Kipp, 7 Cir., 232 F.2d 147, 150, it was said, discussing a writ of habeas corpus ad prosequendum, that the "United States District Court for the Northern District of Illinois could not have compelled the State of Michigan to surrender Moses after he had been incarcerated in that state for violation of a Michigan law. In spite of the terminology of the writ, the consent of the Michigan authorities was necessary to obtain the custody of Moses." In Lunsford v. Hudspeth, 10 Cir., 126 F.2d 653, 657–658, Huxman, J., dissenting, pointed out that the "most, then, that is required under the rule of comity is that the request be given respectful consideration" since the state had the right to "deny the request in toto, on condition, or grant it absolutely." Regarding such requests, a California court has said: "The granting of the request is, of course, discretionary. * * * The federal authorities had a right to refuse the request with or without cause." People v. South, 122 Cal.App. 505, 510, 10 P.2d 109, 112.

15. See Johnston v. Wright, 9 Cir., 137 F. 2d 914.

16. Wall v. Hudspeth, 10 Cir., 108 F.2d 865 (voluntary surrender to federal authorities by state presumed); Vanover v. Cox, 8 Cir., 136 F.2d 442, certiorari denied 320 U.S. 779, 64 S.Ct. 93, 88 L.Ed. 468 (same); cf. Powell v. Sanford, 5 Cir., 156 F.2d 355; People v. Knight, 106 Cal.App.2d 312, 234 P.2d 992 (federal consent to state proceedings presumed); cf. People v. Nokes, 25 Cal.App. 2d 259, 77 P.2d 243.

the heritage of each state. Within such territorial area, the state has authority to lay down and enforce laws. Beyond the boundary, the state has no power except by agreement of the foreign state. Physical possession of the res or the body within its boundaries is an essential of the exercise of jurisdiction.

In any discussion of the rights of sovereigns, the territories of which do not overlap, actual physical possession of one accused is the sole criterion of the power to proceed absent agreement or self imposed restriction. The power of the courts to adjudicate and sentence and of the authorities to imprison is based thereon. The reason is obvious. Where the body of the accused is in manual possession of one sovereign, surrender can be obtained by another such sovereign only by consent of the first or by force. The latter is unthinkable.

█ It is a corollary of this doctrine that there can be no theoretical possession of the body under such circumstances. When a defendant or a parolee or a probationer is released from actual physical custody, even for temporary purposes, he may be arrested, tried and convicted by any other such sovereign in the territory in which he may be without the consent of the first sovereign, which may have a judgment against him as yet unsatisfied or which may be seeking to try him.

This key factor of physical possession of the body of Schmittroth by the state court was not given adequate treatment in the arguments in the instant case.

█ There is authority vested in any sovereign by which a person is accused of committing a crime to seize the body of that person if he be found in territory over which the sovereign exercises dominion.[17] The body of defendant is comparable to the res. There cannot be any proper proceedings in court in felony cases unless he is physically present.[18] Therefore, criminal proceedings above the class of minor misdemeanor are almost universally initiated by the seizure of the body of the accused, which is technically denominated an arrest.

█ Even though a person has been physically seized, his body must be held in manual custody. Otherwise, the officers and the court may lose jurisdiction of his person. If defendant escapes, is released on bail or probation or parole and does not present himself in court, the proceedings must, in strict construction, cease. The only method by which the tribunal may reassert jurisdiction is by "arrest." In the meantime, if the accused comes within the territorial jurisdiction of another sovereign, the latter may seize his body and continue him in physical custody if he be accused of an offense against the peace and dignity thereof.[19] Seizure of

---

17. See Cal.Pen.Code (West's Ann.Pen. Code) § 777, setting forth the criminal jurisdiction of California over crimes committed within the territorial limits of the state, except where exclusively cognizable in the federal courts.

18. "Neither a state nor federal court may try one who is charged with a crime without jurisdiction of the person and custody of the prisoner." People v. South, 122 Cal.App. 505, 509, 10 P.2d. 109, 111. Cf. California Constitution, Article I, § 13, West's Ann.Const. and Cal.Pen.Code (West's Ann.Pen.Code) §§ 865, 977, 1018, 1043, 1148, 1181, subd. 1, 1193, 1255, all requiring the personal presence of the accused at various stages of trial for major crimes.

19. Cases involving proceedings brought by a second sovereign against persons on bail from the courts of the first sovereign are illustrative of this point. Numerous cases uphold the jurisdiction of state to try the accused, on bail from a federal court in a different state, United States ex rel. Moses v. Kipp, 7 Cir., 232 F.2d 147; Ex parte Marrin, D.C., 164 F. 631; or from a federal court in the same state, Hebert v. State of Louisiana, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270; Mitchell v. Boen, 10 Cir., 194 F.2d 405; Albori v. United States, 9 Cir., 67 F.2d 4; In re Fox, D.C.Cal., 51 F. 427. Likewise, federal jurisdiction over persons on bail from other states has been upheld, Vane v. United States, 9 Cir., 254 F. 28, as well as from the courts of the same

the body by the latter postpones all claims based upon prior initiation of the proceedings or previous arrest by another sovereign until in some way possession may be resumed by the latter. If the accused be free in the territorial limits of a sovereign, he may be seized lawfully if so accused.

 A multitude of cases indicate that, if the accused be brought personally before a court which has jurisdiction of the subject matter, he may be tried, convicted, sentenced and imprisoned. It makes no difference by what means, rightful or wrongful,[20] his body was brought into court.[21] It is immaterial that he is on bond to appear for trial in another court.[22] It is of no consequence that he may have escaped[23] from the prison of another sovereign or may have violated the order of probation of the court of another sovereign.[24] The consent of no other sovereign is essential to the validity of the proceeding. The objection of no other sovereign is effective. Logically, it cannot be of moment that the accused is released on probation from the court of another sovereign and without violation of the probation order placed in physical custody by the second sovereign and tried, sentenced, convicted and imprisoned by conviction in its court.

As illustrative of these principles, the states of California and Nevada may be taken as examples. If a prisoner in Folsom Penitentiary, who has been tried, convicted and incarcerated for a felony against California, escapes and is arrested in Nevada upon warrant for a prior or subsequent offense against the latter state, the officers of that state may hold him in custody, the Nevada courts can try him and, upon conviction, sentence him to imprisonment and he may be held in custody there until his time expires. In such a situation, California has no prior rights. Its officers cannot take the prisoner from the custody of the Nevada officers. The California courts cannot enjoin the Nevada courts from proceeding.

states, Florio v. Edwards, 5 Cir., 80 F.2d 509; United States v. Taylor, D.C.Tenn., 284 F. 489; Metcalf v. State, 57 Okl. 64, 156 P. 305. L.R.A.1916E, 595. In each of these cases, the consent or acquiescence of the sovereign to which bail runs is discussed. This may be on the ground that the proceedings were still current. Mitchell v. Boen, supra, casts doubt on this proposition, saying 194 F.2d at page 407, that it was "doubtful whether the Federal Government could have demanded possession of appellant after he was arrested on the state charge, so long as his bonds on the federal cases were not cancelled." Compare United States v. Vannata, D.C., 290 F. 212. Whatever the rationale of the decisions, it is immaterial here, since Schmittroth was not on bail.

20. Forcible abduction into territory of interested sovereign: jurisdiction upheld. Ker v. People of State of Illinois, 119 U.S. 436. 7 S.Ct. 225, 30 L.Ed. 421; Mahon v. Justice, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283; Pettibone v. Nichols, 203 U.S. 192, 27 S.Ct. 111, 51 L.Ed. 148; Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541. Cf. United States ex rel. Voigt v. Toombs, 5 Cir., 67 F.2d 744. The court said in Frisbie v. Collins, supra, 342 U.S. at page 522, 72 S.

Ct. at page 511: "This Court has never departed from the rule announced in Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 229, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction'."

21. People v. Pratt, 78 Cal. 345, 20 P. 731 (illegal extradition from Japan); Ex parte Ah Men, 77 Cal. 198, 19 P. 380 (irregular arrest); State v. Melvern, 32 Wash. 7, 72 P. 489; Nelson v. State, 115 Neb. 26, 211 N.W. 175 (arrest without warrant). See also In re Johnson, 167 U.S. 120, 17 S.Ct. 735, 42 L.Ed. 103 (illegal arrest); Malone v. United States, 9 Cir., 67 F.2d 339 (premature arrest). "Even though the defendant may have been brought before the trial court by illegal proceedings, this does not deprive that court of jurisdiction." People v. Youders, 96 Cal.App.2d 562, 568, 215 P.2d 743, 747.

22. See Mitchell v. Boen, 10 Cir., 194 F.2d 405.

23. See Craig v. Hunter, 10 Cir., 167 F.2d 721.

24. See Flourre v. United States, 6 Cir., 217 F.2d 132.

Since we have learned certain fundamentals from the authorities above, the application of these to the officers and courts of California in connection with the Schmittroth case will be made.

The state courts had jurisdiction of the subject matter. A complaint had been filed in the Municipal Court, San Diego Judicial District, County of San Diego, State of California. The title was:

"The People of the State of California,
Plaintiff,

v.

William Roth,[25]

Defendant

*Complaint—Criminal"*
[Penal Code, Sec. 476] [26]

The charge was that defendant uttered a check bearing a fictitious name. All of the elements of the crime described in the section of the California code above set out were duly pleaded. The complaint was properly signed by the complainant and sworn to before a judge of the above court, according to law.

Therefore, the Municipal Court had jurisdiction of the crime which was the subject matter.

A warrant of arrest was duly issued thereon. William Schmittroth, who is identified as William Roth, the defendant, was found free in the territory of the state of California. Under California law, the officials had not only the right but the duty to take him into physical custody under the warrant.

Now, since the officers of the state of California had physical possession of the body of Schmittroth, they had a right to continue to hold him in custody lawfully. The Municipal Court had jurisdiction of the crime, and, when Schmittroth was produced in person, that tribunal had jurisdiction and control of defendant. The proceedings were valid and lawful.

It is true the state authorities might have yielded Schmittroth up to the custody of the officers of the state of Nevada, if he had broken out of the penitentiary there. Also, they might have yielded him up and consented to prosecution in the courts of the state of Nevada for some crime previously or subsequently committed there. If Schmittroth were shown to have been previously on probation upon sentence for felony by the Nevada courts, the California officers could have turned him over and permitted the Nevada courts to free him on probationary status again, if that were desired. But the state of California would not be bound to consent to any of these things.

The thesis that actual physical possession of the body of accused is unnecessary to jurisdiction, if proceedings are brought against him in another court, cannot be maintained. The contrary may be demonstrated in this very case. The state court had on file the first complaint for an offense committed before the federal crime. Since the California court did not have physical custody, the federal proceeding where defendant was arrested took precedence. But, after the federal court had freed defendant on probation, the state court acquired jurisdiction of the person by arrest. In neither instance was the consent of the other sovereign necessary to jurisdiction.

---

25. This name was an alias used by Schmittroth.

26. "Making, possessing, uttering, etc., fictitious instruments; intent; punishment

"Every person who makes, passes, utters, or publishes, with intention to defraud any other person, or who, with the like intention, attempts to pass, utter, or publish, or who has in his possession, with like intent to utter, pass, or publish, any fictitious bill, note, or check, purporting to be the bill, note, or check, or other instrument in writing for the payment of money or property of some bank, corporation, copartnership, or individual, when, in fact, there is no such bank, corporation, copartnership, or individual in existence, knowing the bill, note, check, or instrument in writing to be fictitious, is punishable by imprisonment in the county jail for not more than one year, or in the State prison for not more than fourteen years." Cal.Pen.Code (West's Ann.Pen. Code) § 476.

In the situation outlined above, it would not change the principle or the result if it be assumed the defendant were on probation from a California court and that he came into Nevada without violation of probation, and, thereupon, the officials of the latter state arrested him and proceeded against him in the courts there on a charge filed before probation from the California courts had been granted.

When we consider the interaction of the state and federal courts in the field of dual sovereignty in identical territory, it is necessary to deal with the only case which is squarely in point. Grant v. Guernsey, 10 Cir., 63 F.2d 163, affirmed, with two judges concurring and one dissenting, the prevention of prosecution of a defendant in a state court, from which he was on bail, by the United States District Court, sitting in the same territory. The ground for prevention was that the defendant had previously been convicted in the same federal court and at the time was released under supervision of the probation officer of that court. The acts for which he was prosecuted in the state court had been done prior to his release by the federal court on probation.

■■■ This decision, which was handed down not long after the federal probation system was put into operation throughout the country,[27] has thrown the law into confusion. It has been expressly disapproved by another United States Court of Appeals.[28] The opinions which have given it lip service have not been in point on the facts.[29] It is not binding upon this Court. It seems to be an exemplification of the doctrine that hard cases make bad law.

This decision is demonstrably wrong on each of the points of the majority opinion.

(1) Physical custody of defendant is equated with supervision by a probation officer or release by a state court on bail.

■■■ This is a flagrant error. No principle is better established than that habeas corpus will not lie where the person is not in physical custody [30] of

---

27. The Guernsey case was decided in 1933, eight years after the Probation Act was passed. Public Law 596, of the 68th Congress (1925), 43 Stat. 1259, 18 U.S.C.A. § 3651 et seq.

28. "We understand the Guernsey case to hold that the second court, purportedly assuming jurisdiction, is entirely lacking in it, though the same result could have been reached as easily by holding that, where the first objects, the second cannot proceed, as a matter of comity, to exercise its jurisdiction. If this is the holding of that decision, we decline to follow it." United States ex rel. Pasela v. Fenno, 2 Cir., 167 F.2d 593, 595. The soundness of Grant v. Guernsey was questioned in United States ex rel. Spellman v. Murphy, 7 Cir., 217 F.2d 247, 250, and United States v. Schurman, D.C., 84 F. Supp. 411. A recent District Court case, Eaves v. Edwards, D.C., 143 F.Supp. 229, affirmed per curiam, 6 Cir., 235 F.2d 959, refuses to follow the case.

29. See Dillingham v. United States, 5 Cir., 76 F.2d 35, holding only that revocation of appellant's federal probation, for violation of its conditions, was proper; United States ex rel. Hall v. McGowan, D. C., 80 F.Supp. 792, affirmed 8 Cir., 174

F.2d 902, holding service of a parole violation warrant to be timely, in that it had not expired. In United States v. Pendergast, D.C., 28 F.Supp. 601, the court explained its reasons for the sentences granted in an earlier case. In granting its permission, in advance, for state criminal proceedings, the court placed some reliance upon Grant v. Guernsey, although the defendants were at the time under prison sentences, with probation to run from release. It said, 28 F.Supp. at page 613: " * * * let this one thing be clear. This court never has protected and never will protect any person to whom probation has been granted from prosecution in any court of the United States or of any of the states." Only United States ex rel. Speece v. Toman, D.C., 23 F.Supp. 119, 121, shows similarity of facts, and there it should be noted that the court, as was the court in Pendergast, was of the view that "the probation order should not now be used as a sanctuary or as a means of conferring immunity from the laws of the state of Illinois," and, accordingly, turned the relator over to the state.

30. "Relief under habeas corpus is limited to release from present detention.

the officer to whom the writ is directed.[31] The writ of habeas corpus was granted to command the state officers to release defendant. It might have been directed against the sureties on the bond of defendant. In effect, the order was an injunction which prevented the state court from proceeding further with trial of the accused. There is no precedent for such action. All the law is to the contrary.

This case postulates that supervision by the federal court or the probation officer, after release on probation, is identical with physical possession of the body of defendant by officers of the court. As has been shown elsewhere in this opinion, that assumption is untrue. The court has the power of revocation of probation and of rearrest only.[32] The probation officer is empowered only to arrest for cause.[33] Therefore, the assumption that there is physical custody is false and fallacious.

(2) The ruling that the state court was interfering with proceedings in the federal court by prosecuting one accused of violating a state law when that person was physically in reach of state process is likewise incorrect.

The reverse is true. The federal court there, arbitrarily and without cause, enjoined a criminal proceeding in the state court. Reliance was placed upon cases

where the sovereign had actual possession of the body and therefore the power to hold accused and jurisdiction to proceed.[34] Such decisions were misconstrued to mean that the federal court had such power after release of accused. The proceedings in the federal court were at an end. Defendant had been released. The federal court could have had him rearrested under certain contingencies. But otherwise its power was exhausted. When the federal court stopped the state prosecution, these facts, upon which the action was taken, were discounted. A misinterpretation of these cases, which were decided before there was a federal probation law, is responsible for this excrescence. Had the federal prosecution been going on and had defendant been actually in federal custody, the decision would have been correct. But the federal court glorified a fiction.

(3) The holding that an accused in the state court has the right or the status to petition for habeas corpus in the federal court simply because he has been released from the federal court on probation is error.

There is no basis for this position, as will subsequently be shown in this opinion. Suffice it to say, the holding on this point has been repudiated and is no longer the law in the circuit where it originated.[35]

It is not available to test the legality of threatened detention." Crow v. United States, 9 Cir., 186 F.2d 704, 706.

31. United States v. Bradford, 2 Cir., 194 F.2d 197, certiorari denied 343 U.S. 979, 72 S.Ct. 1079, 96 L.Ed. 1371 (probation); Weber v. Squier, 315 U.S. 810, 62 S.Ct. 800, 86 L.Ed. 1209 (parole); In re Rowland, D.C., 85 F.Supp. 550, affirmed sub. nom., Rowland v. State of Arkansas, 8 Cir., 179 F.2d 709, certiorari denied 339 U.S. 952, 70 S.Ct. 841, 94 L.Ed. 1365, rehearing denied 339 U.S. 991, 70 S.Ct. 1022, 94 L.Ed. 1392 (bail). The latter opinion points out that Mackenzie v. Barrett, 7 Cir., 141 F. 964, certiorari denied Mackenzie v. Pease, 203 U.S. 588, 27 S.Ct. 776, 51 L.Ed. 330, holding contra and so relied upon in Grant v. Guernsey, 10 Cir., 63 F.2d 163, is out of harmony with the later Supreme Court cases on the point, and refuses to follow it.

In accord with Rowland, see United States ex rel. Walmer v. Tittemore, 7 Cir., 61 F.2d 909.

32. 18 U.S.C.A. §§ 3651, 3653.

33. 18 U.S.C.A. § 3653.

34. Taylor v. Taintor, 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287; Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607. It should be remembered that the losing party in Taylor did *not* have physical possession of the body, and that the federal authorities in Ponzi, who consented to state proceedings, *did* have physical possession of the body.

35. See Wall v. Hudspeth, 10 Cir., 108 F. 2d 865; Rawls v. United States, 10 Cir., 166 F.2d 532, certiorari denied 334 U.S. 848, 68 S.Ct. 1498, 92 L.Ed. 1771; Craig v. Hunter, 10 Cir., 167 F.2d 721; Stripling v. United States, 10 Cir., 172 F.

There is a line of cases in which the rule of law that a res or an accused in physical possession of one sovereign cannot be taken away or proceeded against by another by judicial process is discussed. See Ableman v. Booth (United States v. Booth), 21 How. 506, 62 U.S. 506, 16 L.Ed. 169; In re Tarble's Case, 13 Wall. 397, 80 U.S. 397, 20 L.Ed. 597; Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390. These decisions have been distorted in the argument. Since each of these opinions dealt with an attack by a state against federal officers in possession of the body of accused or a res, it is contended these establish a "federal supremacy," where state and federal governments seek to proceed against a person alleged to have violated the laws of each sovereign, respectively. The idea that there is any so-called "federal supremacy" in this restricted area is distinctively repudiated in Covell v. Heyman, 111 U.S. 176, 182–183, 4 S.Ct. 355, 358, 28 L.Ed. 390, where it is said:

"These courts [state and federal] do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent and have no common superior. They exercise jurisdiction, it is true, within the same territory but not in the same plane; and when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void." [36]

So long, therefore, as either sovereign has possession of the body of accused, it may proceed until judgment is satisfied.[37]

■ In the field of dual sovereignty covering identical territory, the principles emanating from consent, comity and physical possession of the body of accused are the same and are applied in the same manner as these principles are applied where the territories of the sovereigns are wholly separated. The federal courts are bound by such principles also.

This axiom may be illustrated by another hypothetical example. If Schmittroth had been indicted in the United States District Court of Nevada in

---

2d 636; Mitchell v. Boen, 10 Cir., 194 F. 2d 405; Werntz v. Looney, 10 Cir., 208 F.2d 102; all holding that the accused has no standing to contest the arrangements made between sovereigns regarding his disposition.

36. Booth's case and Tarble's case have been cited in support of the proposition that "a court having possession of a person or property cannot be deprived of the right to deal with such person or property until its jurisdiction is exhausted, and that no other court has the right to interfere with such custody or possession." Ex parte Johnson, 167 U.S. 120, 125, 17 S.Ct. 735, 737, 42 L.Ed. 103. We agree with this expression, although the rule there set out does not turn on federal supremacy.

37. "As an easy and flexible means of administering justice and of affording each sovereignty the right and opportunity to exhaust its remedy for wrongs committed against it, there has evolved the now well established rule of comity which is reciprocal, whereby one sovereignty having exclusive jurisdiction of a person may temporarily waive its right to the exclusive jurisdiction of such person for purposes of trial in the courts of another sovereignty. Thus the offender is accorded a speedy trial and the administration of justice is expedited by the availability of evidence, which might through lapse of time be lost, but such a waiver is a matter addressed solely to the discretion of the sovereignty, or its representatives having power to grant it. Ponzi v. Fessenden, supra, and Ex parte Aubert, D.C., 51 F.2d 136. The privileges granted by this flexible rule of comity should and must be respected by the sovereignty to which it is made available, and this respectful duty is reciprocal, whether federal or state, because neither sovereignty has the power to override it. Under the free exercise of this rule, no right or immunity granted by the constitution, laws, or treaties of the United States, is invaded or impaired." Lunsford v. Hudspeth, 10 Cir., 126 F.2d 653, 655.

1953, but subsequently convicted and placed on probation by the District Court of the Southern District of California and thereafter had violated the condition of the order by going into Nevada, he could have been arrested, tried, convicted and incarcerated there for the prior offense. The California District Court could not have freed him on writ of habeas corpus. Neither could it have interfered with the proceedings in the Nevada federal court by injunction or other writ. There would be no necessity for prior consent by the California court. There would be no compulsion upon the Nevada court to yield possession of the body by virtue of comity or otherwise. If the same situation be assumed, except that the prosecution of 1953 was initiated in the state court of Nevada and the subsequent proceedings leading to probationary release held in that court, the United States District Court of California certainly would have no power to interfere.

There is no intention here to deal with questions of public policy at length. These have been presented as stark realities by the able and provocative opinions of Judge Chambers herein.[38] We are certain that, if consent of a federal court be necessary before prosecution of its probationer may proceed in a state court, then consent of the state court is necessary before a probationer thereof can be tried in a federal court. But our discussion treats of jurisdiction of in-dividual states and of the federal government. Since it is herein demonstrated that there is no "federal supremacy" in the corner of the field which is specifically under consideration, the powers of a particular state and the central government are those of dual sovereignty in the identical territory. Each is supreme in the area defined. The problem is political and not always justiciable. In a like conflict between sovereigns in the dark middle ages, doctrines of "benefit of clergy" and "sanctuary of the precinct" led to unutterable favoritism, hypocrisy and confusion through centuries.

The Federal Constitution defines the line of demarcation with some clarity. The powers of the respective sovereigns have generally been respected by the officers of the other. The obligations are in this narrow area mutual and reciprocal, and the outlines have been almost universally softened by the veil of comity in negotiation. If a federal court can assert such, like authority must be accorded to the tribunals of the state where the field is reversed. Sophomore debates as to which sovereign first thought of proceeding will then be the order.

Should the courts sanction the system whereby a confessed and convicted felon can plead his "clergy"[39] in the state court, because of his ability to write a rationalized exposition of his right to to liberty based upon a federal conviction?[40] Shall he draw about his form

---

38. Reported at 233 F.2d 608 and 235 F. 2d 756.

39. See Blackstone, Commentaries (Cooley Ed., 1899), Book IV, ch. 28.

40. "Where the defendant is a state prisoner, consent is found in his physical surrender to federal authorities. Where the defendant is a state parolee, consent must be found in the state's granting the parole, and in its failure to object to federal custody. To hold otherwise would be to create an intolerable and most dangerous situation whereunder the considerable number of state parolees would be at large but immune to federal prosecution and punishment for the violation of federal law. Federal-state comity would not be furthered by such practice. Moreover the same reasoning would also clothe federal parolees with immunity against state prosecution for the vastly greater number of offenses known to state law. No such incredible purposes were intended to be served by the humane provisions of the probation and parole statutes. Once we accept the conclusion that a federal court may incarcerate a state parolee, a fortiori it should be able to admit him to probation. Grant v. Guernsey, supra, is inconsistent with these views; I must respectfully differ." United States v. Schurman, D.C., 84 F. Supp. 411, 414.

the sacred circle [41] of supremacy, inasmuch as he has attained access to the outer court of the sanctuary, by his plea of guilty to a federal crime? Shall he, as the Roman in the dusk of the dissolution of the Empire, claim that he carries federal law on his head [42] and the state court must acknowledge the claim, for he has admitted guilt to a heinous federal crime and is entitled to immunity in view of his adoption of protection by the national government? These are grave questions, but since they are political in a sense, this opinion will be confined to consideration of jurisdiction and power of the state and federal courts.

It must not conceived by anyone that this Court repudiates the doctrine of comity between state and federal officers and the courts of the respective systems. However, possession of the body of accused by one sovereign withdraws him from the jurisdiction of the other. This is the rule of law.[43] Public policy sustains this rule also in order that physical conflict between the agents of state and federal government may be prevented. Comity is not an inflexible principle, but rather an act of grace to prevent an unseemly struggle by competing sovereigns over the right to exercise jurisdiction over accused.

The sovereign, state or national, which has possession of the body of accused, acts through comity if it permit the court of a different sovereign to proceed against him either by "loan" [44] or by surrender.[45] Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, teaches this doctrine explicitly. The sovereign who lacks possession of the body "permits" another to proceed against the accused, not through grace, but by necessity. The federal government had possession of Ponzi. It is clearly laid down as a rule of law that the state authorities lacking possession had no power to proceed against Ponzi. This point is illuminated by lengthy quotations from Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, noted herein at page 604 of this opinion. The Supreme Court then stated that, since the federal government had the body of Ponzi physically in possession, it could and did, as of grace, permit the courts of the state to proceed against him. This opinion distinctly did not say that the federal government would have had any authority in the matter if the state courts had had physical possession of Ponzi.

Although the California authorities, who were in possession of Schmittroth, might have yielded him up to the federal court by comity, they were not bound to do so any more than were the federal officers in the Ponzi case. None of these cases is based upon a doctrine of "federal supremacy."

The principles hereinabove discussed do not vary whether there are two sovereigns whose territories are entirely separated each from the other or there is a dual sovereignty which is imposed within the same territorial limits. The federal executives or administrative officials have no more power in California than in Nevada. Such officials have no more power to take a prisoner held for the state court out of the possession and custody of the sheriff of the State of California than they have in Nevada. As we have seen, this power does not exist.

It is undeniable and undenied that a federal court can and is bound to interfere with administration of criminal law in state courts within the same territorial boundaries where rights guaranteed by the Federal Constitution, treaties or statutes are involved.[46]

41. "Around her form I draw the awful circle of our solemn church." Lytton, Richelieu or, The Conspiracy, Act IV, Sc. 2.

42. Fuero Juzgo, or Forum Judicium.

43. Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355.

44. Zerbst v. McPike, 5 Cir., 97 F.2d 253, 254.

45. Stamphill v. Johnston, 9 Cir., 136 F.2d 291, certiorari denied 320 U.S. 766, 64 S.Ct. 70.

46. 28 U.S.C.A. § 2241(c) (3).

Special factors affect the authority of federal courts to take action. It is contended there that the doctrine of federal supremacy controls in this case. But it is a doctrine established since the foundation of the national government that powers not delegated thereto by the Constitution are reserved to the states. The federal courts are limited by this doctrine also.[47] In addition, the inferior federal courts are created by action of Congress and are given only such jurisdiction as is accorded to each by statute.

The right to intervene in these special cases overrides all other principles such as we have discussed. But the right is narrowly constricted by the nature of the national system of government wherein powers granted to the general government, either expressly or by necessary implication alone, can be exercised thereby while all others are reserved to the individual state. The chief examples of proper federal intervention are: (1) Removal of a criminal case where a federal officer is defendant, whether he be in custody of the state court or not;[48] (2) Habeas corpus where defendant is in custody after a trial in the state courts, wherein he has been denied a right guaranteed by the Federal Constitution and where he has exhausted his remedies in the state courts.[49]

As to the first point, the instant case does not fall within any exception above mentioned or any other which has been called to our attention. The District Court was bound to find jurisdiction of the subject matter before it proceeded.

Schmittroth does not fall within either of these classifications. He is not a federal agent or officer. If he has any right under federal law which has been violated, he has not exhausted his state remedies.[50]

But the decisive points are that the United States District Court (1) had no jurisdiction of the subject matter unless it fell within such an exception, (2) was not empowered to take this action against a state officer, and (3) had no jurisdiction of the so-called petitioner then in actual custody of the state courts and officers.

It is said there is a difference between a federal probationer who has violated the conditions of the order and one who has not. The former is likened to a prisoner who has escaped and who, of course, can be picked up in the territory of any sovereign where he is physically present and by that sovereign tried, convicted and imprisoned. This Court is of the view that unrestrained physical presence subjects the escaped prisoner to arrest by any sovereign against whom he has offended and in whose territory he was found. Therefore, the fact that in this case the arrest by the state authorities, where there was no violation of the probation order, makes no logical distinction. The rationale is the same. The release from physical custody with freedom of movement in the territory subject to California is cardinal.

It is claimed that the District Court had custody by virtue of the previous probation order. But the sections of the statutes upon which that order is

47. Cf. Stefanelli v. Minard, 342 U.S. 117, 120–121, 72 S.Ct. 118, 96 L.Ed. 138.

48. 28 U.S.C.A. § 1442. Cf. 28 U.S.C.A. § 2241(c) (2). See In re Neagle, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55, granting federal habeas corpus to bar state prosecution of federal officer, for homicide committed in connection with duty to protect a Justice of the United States Supreme Court. Even this power is sparingly used in "extraordinary" cases, while others are left for trial by the state. United States ex rel. Drury v. Lewis, 200

U.S. 1, 26 S.Ct. 229, 50 L.Ed. 343, affirming denial of habeas corpus.

49. Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572; Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

50. Schmittroth raised the question of the jurisdiction of the state over him in Municipal Court, but his objection was overruled. No state review on this issue was sought.

based confer no such power.[51] The intention of Congress to confer such authority on the federal officers and court must be perfectly clear.[52] It is doubtful whether it would be constitutional to give an authority to treat a person actually free as if he were in physical custody. The order does not state that Schmittroth was in custody of the parole officer or the court.[53] The specific power was retained to rearrest him without a warrant. But the power to seize one who is free is not to be equated with maintained physical possession of his body. No authority was given by Congress to the District Court or the probation officer to hold Schmittroth in custody or to pretend that, while he was free, he was in the physical possession of the probation officer or the court.

The matter may be tested in another way. Schmittroth, while free on probation, could not have maintained habeas corpus in any United States Court for violation of his rights during arraignment or trial.[54] The reason for this is that he was not, contrary to the thesis of Schmittroth, maintained in custody. A writ of habeas corpus lies only to release one wrongfully restrained of his liberty. But, if he were not in custody, the state authorities had a right to seize him in the territory of California for trial.

There should be no doubt that, in the instant case, the decision is based upon physical possession of Schmittroth and the authority and jurisdiction of the state court flowing therefrom. The lack of jurisdiction of the federal court also arises from the same source. No element of consent by the officers of either sovereign or either court is applicable on these facts. The federal court did not consent to prosecution in the state court. We hold consent or failure to consent immaterial. Neither the federal court nor the federal officers petitioned the exercise of comity by the state court, in which forum alone was comity available. If the federal court had permitted the state court to proceed against Schmittroth while the federal marshal still had him in custody, there would have been an act of comity, which would have been graceful. But interference with the state proceeding, when the state had custody, was beyond the power of the District Court.

The federal District Court had no authority over Bert Strand, the Sheriff. It is true he was bound to make return to the writ of habeas corpus.[55] That court has a right to inquire by what authority

51. 18 U.S.C.A. §§ 3651, 3653. The duties of the probation officer do not include maintaining constant physical custody of a probationer, § 3655.

52. That such intention does not exist at all, see United States v. Binion, D.C., 13 F.R.D. 238, 243, appeal dismissed, 9 Cir., 201 F.2d 498, certiorari denied 345 U.S. 935, 73 S.Ct. 796, 97 L.Ed. 1363, where the court said: "Probation is not punishment. The court either suspends the imposition of the sentence, or, having imposed it, stays its execution. 18 U.S.C.A. § 3651. In granting probation the defendant is not taken into custody. He is returned to his regular status in the life of the community, and, except for certain supervision of conduct and limitation of his right to leave the District without the permission of the court or the probation officer, he remains a free agent." Expressing the view that probation or parole is not even "constructive custody," see United States v. Schurman, D.C., 84 F.Supp. 411, 413. Rather, whatever control is maintained through probation would seem to be suspended while the probationer is incarcerated by another sovereign, as during that time the period of probation is deemed tolled. United States ex rel. Demarois v. Farrell, 8 Cir., 87 F.2d 957, certiorari denied 302 U.S. 683, 58 S.Ct. 31, 82 L.Ed. 527; McGuire v. Warden, U. S. Penitentiary, D.C., 122 F.Supp. 699.

53. Indeed, it relegated Schmittroth to "rural and mountain country."

54. United States v. Bradford, 2 Cir., 194 F.2d 197, certiorari denied 343 U.S. 979, 72 S.Ct. 1079, 96 L.Ed. 1371. That case concerned a motion under 28 U.S.C.A. § 2255, but, as Judge Learned Hand said, 194 F.2d at page 200, "The word, 'custody,' has the same meaning as in habeas corpus."

55. Even as the federal authorities were required to return in Ableman v. Booth (United States v. Booth), 21 How. 506, 62 U.S. 506, 16 L.Ed. 169.

and for what cause petitioner was in custody. Assuming that a right under federal law be set out in the petition. But, after a return was made and the federal court was advised that he was in state custody and that proceedings were going on in a state court and had not been concluded, the federal court had no further power over the state official. Schmittroth was clearly shown to be in the dominion and exclusive jurisdiction of the state of California. It was the duty of the sheriff to hold the prisoner in custody under his warrant. It was not his duty to take the prisoner or allow him to be taken before a federal judge upon habeas corpus or otherwise until the state court proceedings had concluded and all remedies there had been exhausted.[56]

Thus it appears that the District Court did not have jurisdiction of the person of Schmittroth. Neither the officers nor the courts of California surrendered custody, control or possession of Schmittroth to the federal court. The sheriff was in lawful possession of Schmittroth and might have defied the order to produce his prisoner or the order to release. The sheriff chose to appeal rather than to defy a United States District Court. But these circumstances do not render the order valid.

The petition advised the federal court that Schmittroth was not in physical custody or possession of any officer or agent of the United States. No ground existed for issuance of habeas corpus against federal agents. The petition showed that Schmittroth was a prisoner of an independent power, the state of California. It appeared there was a proceeding against him in the courts of that state. Again, the District Court was advised there was no authority over him when so held by state officers. The petition did not allege that Schmittroth claimed a violation of any federal constitutional right for which the state courts had denied him redress there, nor that he had exhausted all his remedies in those tribunals. Thus, no independent federal right of Schmittroth was shown.

The essential feature here is that Schmittroth had no right which he could enforce.[57] The problem was created by the dual sovereignty, state and national, under the Federal Constitution. The power of choice is essentially political and executive in character. Ordinarily, the choice is made administratively by the law enforcement officers, state or national, often after consultation with like officials of the other sovereign. Up until the time proceedings are instituted by the state officers on the one hand or federal officials on the other, the courts of neither sovereign have concern with the choice. After proceedings have been instituted in a court, these may be discontinued without the consent of the defendant by the political agents of that sovereignty and the custody turned over to the officers of another for prosecution of defendant. The physical possession of the body of the accused is the key factor.

When Schmittroth was in custody of Bert Strand, Sheriff of San Diego Coun-

---

56. Again, this is because California, having physical custody of a person previously free within its boundaries, could not be deprived by the federal court of that custody, as a matter of law, except on constitutional grounds or other special exceptions, none of which is present in this case. Taylor v. Taintor, 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287; Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355; Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309; Stamphill v. Johnston, 9 Cir., 136 F.2d 291, certiorari denied 320 U.S. 766, 64 S.Ct. 70.

57. Where relator was surrendered from federal detention to the state for electrocution, the court said: "Obviously, he has actually the greatest possible interest in serving the remainder of his federal sentence, and the only question is whether that is an interest which the law recognizes: i. e., whether it is a 'right.' It is not; * * * He has been deprived of nothing to which he was entitled; if the United States has been so deprived, he may not vicariously assert its rights." United States ex rel. Buchalter v. Warden of Sing Sing Prison, 2 Cir., 141 F.2d 259–260.

ty, State of California, he could not exercise the choice as to whether he should be held and prosecuted for an offense against the state or whether he should be turned over by the sheriff to the United States Marshal for revocation of probation or release if the presiding judge of the federal District Court, which had given him probation for another offense against the United States, so elected.[58]

Schmittroth, in the petition, did not set forth any right of his which had been violated either by the state in proceeding against him or by the federal government in failing to intervene and ask for the exercise of comity. This principle has been excellently expressed in the following excerpt:

"A person who has violated the criminal statutes of both the federal and a state government may not complain of the order in which he is tried or punished for such offenses. The interested sovereigns may arrange the order of trial and punishment according to their convenience."[59]

All the cases which assume or find consent by one sovereign to prosecution of a prisoner by another are predicated upon the axiom that the prisoner has no right of choice in the matter.[60] The argument that, since it is the liberty of the prisoner at stake, he must have a right to proceed, is fatuous in face of these realities.[61] The petitioner here, as a state prisoner, had no right which was violated by prosecution in the courts of California.

The petition of Schmittroth did not allege facts upon which there

---

58. Had California, upon request, returned Schmittroth to the Marshal, he could not "complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws." Powell v. Sanford, 5 Cir., 156 F.2d 355, 356.

59. Vanover v. Cox, 8 Cir., 136 F.2d 442, 443–444, certiorari denied 320 U.S. 779, 64 S.Ct. 93, 88 L.Ed. 468. This view is restated in Stamphill v. Johnston, 9 Cir., 136 F.2d 291, 292, certiorari denied 320 U.S. 766, 64 S.Ct. 70, 88 L.Ed. 457.

60. Ponzi v. Fessenden, 258 U.S. 254, 260, 42 S.Ct. 309; United States ex rel. Moore v. Traeger, 9 Cir., 44 F.2d 312, 313; Cato v. Smith, 9 Cir., 104 F.2d 885, 886, certiorari denied 308 U.S. 608, 60 S.Ct. 177, 84 L.Ed. 508; Kirk v. Squier, 9 Cir., 150 F.2d 3, 8, certiorari denied 326 U.S. 775, 66 S.Ct. 265, 90 L.Ed. 469; Gunton v. Squier, 9 Cir., 185 F.2d 470, 471; Wall v. Hudspeth, 10 Cir., 108 F.2d 865, 866; Lunsford v. Hudspeth, 10 Cir., 126 F.2d 653, 655; Stamphill v. United States, 10 Cir., 135 F.2d 177, 178; Rosenthal v. Hunter, 10 Cir., 164 F.2d 949, 950; Rawls v. United States, 10 Cir., 166 F.2d 532, 534, certiorari denied 334 U.S. 848, 68 S.Ct. 1498, 92 L.Ed. 1771; Craig v. Hunter, 10 Cir., 167 F.2d 721, 722; Stripling v. United States, 10 Cir., 172 F.2d 636, 637; Vanderpool v. Hunter, 10 Cir., 177 F.2d 716, 717, 718; Mitchell v. Boen, 10 Cir., 194 F.2d 405, 407; Werntz v. Looney, 10 Cir., 208 F.2d 102, 104; United States ex rel. Demarois v. Farrell, 8 Cir., 87 F.2d 957, 962, certiorari denied 302 U.S. 683, 58 S.Ct. 31, 82 L.Ed. 527; Banks v. O'Grady, 8 Cir., 113 F.2d 926, 927; United States ex rel. Spellman v. Murphy, 7 Cir., 217 F.2d 247, 251; United States ex rel. Moses v. Kipp, 7 Cir., 232 F.2d 147, 150; Florio v. Edwards, 5 Cir., 80 F.2d 509, 510; Ex parte Marrin, D.C., 164 F. 631, 637; United States v. Taylor, D.C., 284 F. 489, 490; United States v. Jackson, D.C., 134 F.Supp. 872, 873; People v. South, 122 Cal.App. 505, 509, 10 P.2d 109; People v. Nokes, 25 Cal.App.2d 259, 261, 77 P.2d 243; Commonwealth v. Domanski, 332 Mass. 66, 123 N.E.2d 368. See Hebert v. State of Louisiana, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270; Flourre v. United States, 6 Cir., 217 F.2d 132; United States ex rel. Pasela v. Fenno, 2 Cir., 167 F.2d 593.

61. This, of course, is not to say that Schmittroth was wholly without recourse. He could have used the mail to inform the federal authorities of his situation. But the thesis of this opinion is that, even if so notified, the federal court still had no jurisdiction to entertain a petition for habeas corpus of Schmittroth, "because he suffered no injury." Mitchell v. Boen, 10 Cir., 194 F.2d 405, 407. Rather, once informed, only the federal authorities had any right to make what arrangements they could with the California officials having custody of the prisoner, for his immediate or ultimate disposition or to apply to the California court in which the proceeding was pending.

was a valid claim or right in him for release from state custody. Since the petition did not allege facts which indicated that the United States District Court had jurisdiction of the subject matter or over the person of Schmittroth or any power over the sheriff as a state officer, the petition should have been dismissed for lack of jurisdiction. Since the District Court did not dismiss the petition, but instead founded an order directing release of the prisoner thereon, the judgment is void and must be expunged.

Reversed with directions to expunge the order appealed from and to dismiss the petition for lack of jurisdiction.