Robert E. MORGAN, Appellant,

v.

UNITED STATES of America,
Appellee (two cases).

Nos. 17245, 19293.

United States Court of Appeals
Ninth Circuit.

June 19, 1967.

Rehearings Denied Aug. 23, 1967.

, Robert E. Morgan, in pro. per.

Milton Stern, Jr., San Francisco, Cal., for appellant (17245).

Joseph H. Lewis, Hollywood, Cal., for appellant (19293).

Cecil F. Poole, U. S. Atty., Charles W. Getchell, Asst. U. S. Atty., San Francisco, Cal., for appellee (17245).

John K. Van de Kamp, U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief Crim. Div., Arthur I. Berman, Asst. U. S. Atty., Los Angeles, Cal., for appellee (19293).

Mitchell Rogovin, Asst. Atty. Gen., John P. Burke, Atty., Tax Div. Dept. of Justice, Washington, D. C., Melvin Sears, Regional Counsel, Internal Revenue Service, San Francisco, Cal., of counsel.

Before CHAMBERS and BARNES, Circuit Judges, and SMITH,* District Judge.

BARNES, Circuit Judge:

This opinion relates to two appeals, each taken in forma pauperis, from two convictions of two counts each.

I

*No. 17,245* is an appeal from the United States District Court for the Northern District of California, Southern Division, of a judgment of conviction for using a false document in violation of 18 U.S.C. § 1001; and for theft by false pretenses and conversion of a United States Treasury check for $444.11, in violation of 18 U.S.C. § 641; as each were charged in two counts (Counts I and II) of a twelve count indictment, and which related to United States 1955 income tax returns filed by appellant and others.

During the time the acts alleged in No. 17,245 took place, appellant was confined as an inmate in Folsom Prison, a California State Penal Institution. Appellant was also charged and tried on Counts III and VI, but the jury disagreed. Appellant was charged jointly with codefendant Davenport in Counts III and IV; with codefendant Escarrega in Count IX; with codefendant Holley in Count XI. Davenport was the sole defendant in Counts VII and VIII. Escarrega was the sole defendant in Count X. Count XI was a conspiracy count charging codefendant Holley. Counts IX to XII were severed, and appellant and codefendant Davenport only went to trial on Counts I to VIII. Davenport then pled guilty, and the trial proceeded as to appellant alone. All defendants named were inmates of the California State prison at the time the offenses allegedly occurred.

II

*No. 19,293* is an appeal from a judgment of conviction on Counts III and IV of a six count indictment filed in the United States District Court for the

---

* Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

Southern District of California, Central Division (now the Central District of California). Count III charged the making and presenting of a false claim for $428.80, based on an alleged income tax refund due William G. Steinhoff; and Count IV charged the making and presenting of a false claim for $428.80 based on an alleged income tax refund due appellant himself.

During the time the acts alleged in No. 19,293 took place, appellant was an inmate of the Wayside Honor Ranch, a California State Penal Institution, where he worked as a trusty in the maximum security hospital. His alleged confederate and codefendant who pleaded guilty, was one "Maximillian B. Michelson."

Michelson pleaded guilty to Counts IV and VI, and the court granted appellant an acquittal as to Counts I, II and V. The conviction of appellant was on each of the remaining two Counts, III and IV, appellant not being charged in Count VI.

### III

Jurisdiction below was predicated on 18 U.S.C. §§ 287 and 3231 in No. 19,293; on 18 U.S.C. §§ 641 and 1001 in No. 17,245; and in each case, jurisdiction here rests on 28 U.S.C. §§ 1291 and 1294.

### IV

Appellant files documents on his behalf in never ending cascades, and without regard to court rules.

To clear out some underbrush, and to enable us to reach the issues, we hold and *order* as follows:

1. Appellant's application (filed April 12, 1967) for stay of the hearing of his two appeals (referring to both No. 17,245 and No. 19,293) then calendared for April 17, 1967, was denied on that date, April 17, 1967.

2. Appellant's "Memorandum to the Court" in No. 17,245, dated April 12, 1967, received by the clerk of this court on April 18, 1967, is ordered "Lodged."

3. Appellant's "Motion" in No. 19,293 for order "to have reporter's transcript prepared on Hearings of Motions for Bill of Particulars, Discovery and Inspection, etc., etc., on September 25, 1962," which motion is dated April 20, 1967, and which was received by the clerk of this court on April 24, 1967, is denied as untimely, and the document is ordered to be marked "Received."

4. Appellant's "Request" in No. 17,245 "that election not to serve sentence filed March 1, 1965 be made part of record," etc., which "Request" bears date of service of April 20, 1967, and which was received by the clerk of this court on April 24, 1967, is denied as untimely, and the document is ordered to be marked "Received."

5. Appellant's alleged "Affidavit," numbered in No. 17,245 and No. 19,293, "in support of Motion for Order to Clerk to file Supplement (sic) Appellant Brief," and failing to show date of any oath, which was received by the clerk of this court is ordered not to be filed, as it is not timely, and the document is ordered to be marked "Received."

6. Appellant's Opening Brief in No. 19,293 was filed herein on September 13, 1966. Appellant's so-called "Supplemental Brief" in No. 19,293 was filed herein on January 31, 1967. Appellant's so-called "First Traverse Brief" in No. 19,293 was received by the clerk of this court on January 31, 1967 and lodged on February 27, 1967. Appellant's "Reply Brief" was presented for filing out of time, having been received by the clerk of this court on April 10, 1967, and thereafter "Lodged."

It is hereby ordered that said "Appellant's First Traverse Brief," and said "Appellant's Reply Brief" be filed, and so marked by the clerk of this court.

7. It is hereby further ordered that appellant's motion to amend his brief entitled "Appellant's First Traverse Brief to Appellant's Reply Brief" be denied.

8. It is hereby further ordered that "Appellant's Oral Argument Hearing Memorandum" in No. 19,293, received by the clerk of this court on April 13, 1967, and so marked, be filed.

## V

We note the two count conviction in No. 17,245 resulted, on December 22, 1960, in sentences of two consecutive five year terms, "to run consecutively to any period of actual confinement under sentence or sentences of imprisonment now being served by the defendant in California State Prison", etc.

The two count conviction in No. 19,-293 resulted, on January 28, 1963, in sentences of two five years terms, consecutive to each other, "and to run consecutive to the sentence defendant is now serving with the State, and consecutive to Federal sentence defendant may have to serve pursuant to judgment" rendered in No. 17,245.

## VI

Errors alleged in No. 17,245 are as follows:

(1) *The court lacked jurisdiction.*

This is based upon appellant's statement that the offense, if any, was committed at Represa, California, the site of Folsom Prison, within the *Northern Division* of the Northern District of California, while San Francisco was in the *Southern Division* of the Northern District of California.

A short answer is a reference to Rules 18 and 19 of the Federal Rules of Criminal Procedure. Rule 18 refers to the *District* where the offense was committed, not the *Division.* And, under Rule 19, the defendant must consent to a trial in another District. If he raises no objection, it is assumed he consents. Entirely apart from the Rules or any waiver, however, appellant was actually tried in the Division where the offense was committed.

Exhibit No. 1 is a Federal Income Tax Form 1040A for 1955, made out in Morgan's name, with its Represa address, and his box number, similar to his number as a state prisoner. This Exhibit was filed with and processed by the District Director of Internal Revenue in San Francisco, as required by law (26 U.S.C. § 6091). Its processing number was R166332, which number was placed on,

and only on, the refund check arising out of that return. Exhibit 2 was the Treasury check, bearing number R166332, issued to appellant and his wife, and addressed to them at the prison. Appellant testified he received Exhibit 2 through the mail and sent it to his Los Angeles attorney for cashing. This attorney arranged for the second endorsement, cashed the check, and divided the proceeds; $200 of which went to appellant.

These facts clearly establish that the Form 1040A was "made" in Represa, filed and processed in San Francisco, that the refund check was issued and mailed there. Count I charges appellant "used" the false document in San Francisco, not the conjunctive that he "made *and* used" the false document there, as the statute reads. (18 U.S.C. § 1001.) The false pretenses required to establish a violation of 18 U.S.C. § 641, and to constitute a stealing were made to the Federal government in San Francisco. See Smith v. United States, 233 F.2d 744, 747 (9th Cir. 1956). Cf. Morissette v. United States, 342 U.S. 246, 249, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The cashing of the check was effected in Los Angeles, outside of the Northern District entirely, thus completing the proscribed act, begun in one District, and completed in another. 18 U.S.C. § 3237 reads as follows:

"(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves.

"(b) Notwithstanding subsection (a), where an offense involves use of the mails and is an offense described in section 7201 or 7206(1), (2), or (5) of the Internal Revenue Code of 1954 (whether or not the offense is also described in another provision of law), and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion filed in the district in which the prosecution is begun, elect to be tried in the district in which he was residing at the time the alleged offense was committed: *Provided,* That the motion is filed within twenty days after arraignment of the defendant upon indictment or information."

Appellant never attempted to proceed under § 3237(b).

(2) *Error in the denial of continuances of the trial.*

Appellant, a disbarred attorney, originally elected to act as his own attorney, and he waived counsel, preferring to proceed in propria persona. (R.T., Vol. 2, pp. 3, 4.) He asked to *expedite* the trial, and waived time to plead. On September 9, 1960, the trial was set for October 3rd, 1960. (R.T., Vol. 2, p. 13.) On September 15th, 1960, Mr. Cragen appeared for defendant. Subsequently motions for continuances were made by appellant on the date set for trial (the trial date having been set over six weeks previously, and there being several defendants pressing for trial). Two judges denied the respective motions. Appellant then proceeded to trial with an attorney.

As an example of appellant's argument on this phase of the case, he states that after eighteen days of trial "for the prosecution" (it was actually eight), his counsel could not make an opening statement "because he was not prepared." Brief, p. 15, citing R.T. pp. 886–887. No support for such a statement appears at pages 886–887 of the record.

Counsel for defendant declined to make an opening statement when the trial started. (R.T., Vol. 5, pp. 140–141.) After eighteen days of trial, he still declined to make an opening statement. (R.T., Vol. 10, pp. 911–912.)

■ We have repeatedly stated the practicalities of the trial court practice require us to respect the general rule that continuances of trials must be left to the good, considered, careful judgment of the trial court, and that we will interfere only where there appears a clear abuse of that wide discretion necessarily granted; otherwise we will not review it. Elkins v. United States, 266 F.2d 588, 595 (9th Cir. 1959). See also Shockley v. United States, 166 F.2d 704 (9th Cir. 1948), cert. den. 334 U.S. 850, 68 S.Ct. 1502, 92 L.Ed. 1773 (1948). No such abuse of discretion here appears.[1]

(3) *Insufficiency of the evidence.*

■ Not only was there sufficient evidence, but an examination of the testimony and the more than ninety exhibits for the government discloses a superabundance of evidence, which if believed by the trier of fact, was amply sufficient to convict. We would characterize the nature of the evidence against appellant as overwhelming. Much of the evidence which he produced was proved false in several ways.

---

1. Although Mr. Cragen protested in these hearings, and by affidavit filed November 4, 1960 that he was not prepared to go to trial, there is no showing that any aspect of appellant's defense had to be neglected. The one persistent object of pretrial preparation stated by appellant and Mr. Cragen was to get prison records and prior statements of the prison convicts who were involved in the case (see motions filed October 24, 1960 and November 4, 1960). The records show that numerous subpoenas duces tecum and writs of habeas corpus ad testificandum were issued on behalf of appellant, and that the Folsom Prison education supervisor, five prison inmates and three jail inmates were called as defense witnesses in addition to the five prison inmates and two prison officers called and cross-examined as government witnesses. Professor Paul L. Kirk was also called as an expert handwriting witness for defendant at the government's expense. (Appellee's Brief, No. 17245, p. 19.)

*(4) Refusal to quash exhibits.*

The court's refusal to quash Exhibits 7 and 11, and the charge that the government violated the pretrial order previously made by the trial judge, are each equally, and utterly, without merit, as the record clearly shows.

*(5) The effect of the Writ of Habeas Corpus Ad Prosequendum.*

Appellant has contrived an intricate argument based on his own erroneous views as to the nature of a writ of habeas corpus ad prosequendum. He begins with the fallacious and erroneous premise that the writ can lawfully issue only at the request of the prisoner. (See VIII, subdivision (4), *post.*) Since the writ involved in this appeal was issued at the request of the United States Attorney, appellant concludes that it was null and void. Therefore, he contends, when the California authorities released him to the federal authorities the release was absolute. From this point he goes on to assert that (1) he was entitled to bail pending trial, and (2) his federal sentence should have begun immediately upon conviction, rather than awaiting the completion of his California sentence. Appellant's house of cards falls because his original premise is erroneous.

■ The writ of habeas corpus ad prosequendum is specifically authorized by 28 U.S.C. § 2241(c) (5). As the Supreme Court explained in Carbo v. United States, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed. 2d 329 (1961), habeas corpus is a generic term, embracing both habeas corpus ad subjiciendum (to inquire into the cause of the restraint) and habeas corpus ad prosequendum (to bring the prisoner to trial). In that case the Court said:

> "The Chief Justice [Marshall in Ex parte Bollman, 4 Cranch (8 U.S.) 75, 2 L.Ed. 554 (1807)], following the English practice, particularly 3 Blackstone, Commentaries *129, noted, that the writ *ad prosequendum* was necessary to remove a prisoner in order to prosecute him in the *proper jurisdiction* wherein the offense was committed. In his discussion of the common usage of the various writs, he

recognized in Ex parte Bollman, supra, that the Congress had without qualification authorized the customary issuance of the writ *ad prosequendum* by a jurisdiction not the same as that wherein the prisoner was confined." 364 U.S. at 615, 81 S.Ct. at 341.

■ It is the "customary issuance" which appellant here tells us is void. The argument is completely without merit. It is clear that the prisoner's consent is irrelevant to the issuance of the writ. United States ex rel. Moses v. Kipp, 232 F.2d 147 (7th Cir. 1956). In *Kipp* it was even said that the prisoner had no standing to attack the operation of the writ as it required his return to state authorities, but a footnote in Carbo v. United States, supra 364 U.S. at 612, n. 1, 81 S.Ct. 338, casts doubt on such a position. It is nevertheless unquestionable law that the writ of habeas corpus ad prosequendum may issue without it having been requested by the prisoner.

■ Appellant's assertion that his federal sentence should have begun to run immediately upon conviction is without merit in light of our previous determination that the writ of habeas corpus ad prosequendum was lawfully issued and California's release was therefore conditional rather than absolute.

*(6) Privileged communications.*

Appellant urges (a) that the introduction of three privileged communications (Exs. 7 and 11) between client and lawyer violated the rule against such evidence when witness Butterfield testified; and (b) that said letters were not shown him prior to trial, which failure violated an existing order for discovery and inspection.

■ (a) The first contention has no merit. Appellant asked Mr. Butterfield to act as a conduit for the funds he fraudulently obtained. Appellant neither sought nor obtained legal advice from Mr. Butterfield. The record discloses that Mr. Butterfield was not employed to render any legal advice or legal assistance with respect to appellant's 1955 income tax return, or the refund he sought based thereon. Cf. discussion in

*Olender*

Olender v. United States, 210 F.2d 795 at 806 (9th Cir. 1954) and cases therein cited, particularly federal tax cases.

■ (b) The second contention likewise is without merit. The order for inspection was not made by the court as broad as was appellant's request. The court limited the discovery to "anything they [the government] claim they took from him." Other than this limited grant, appellant's motion was denied "as it now stands without prejudice." (R.T., Vol. 3, p. 26.) Three days later the trial judge interpreted his own order to mean "those documents * * * prepared and filed with the Government by the defendant, that he ought to see them. As to others, no." (R.T., Vol. 4, p. 38.) Exhibits 7 and 11 were "other" documents. No element of surprise or unfairness appears in the record.

(7) *Codefendant's plea of guilty.*

Appellant urges that the guilty plea of codefendant Davenport was prejudicial to appellant and entitled him to a mistrial.

(a) Part of the prejudice here charged was based on the alleged presence of the jury when Davenport was taken from the courtroom through a corridor, and Davenport's former wife, who feared him, was present in the corridor. Appellant's motion for mistrial was based on the alleged fact that the prosecution contrived with a government agent to hold Davenport's wife in the corridor so that this confrontation would occur, and Davenport was placed under such emotional stress as to induce him to plead guilty. (R.T., Vol. 7, p. 325.)[2] A careful examination of the record (R.T., Vol. 7, pp. 314–334) discloses (i) that the prosecutor represented that he had tried to delay removing Davenport from the courtroom in order to avoid any such confrontation; (ii) that, according to the bailiff who had custody of the jury, no juror witnessed the alleged "confrontation."

■ The court, passing on the merits of the factual question, denied the motion for mistrial; and carefully instructed the jury that they should draw no inferences from the fact Davenport was no longer on trial, but should judge the evidence against each defendant separately. (R.T., Vol. 7, pp. 334–336.) The jury was so instructed immediately after Davenport's plea, when the fact was fresh in their minds, and the jury was therefore not burdened with the problem of lack of any instruction as to the negative or neutral effect on appellant's case of Davenport's plea. Thus, the jury was not called upon, at the conclusion of the case, to "unring" a bell.

The factual situation here presented —a plea of guilty by a codefendant during a trial—is not an unusual situation where there exists a multi-count indictment of alleged coconspirators. See our recent discussion of the problem in Osborne v. United States, 371 F.2d 913 (9th Cir. 1967), at p. 923 et seq. There a laconic instruction was given, after a plea in course of the trial. (Cf. quotation, p. 923.) Here a much longer and carefully detailed instruction was given. (R.T., Vol. 7, p. 334, line 21 to p. 336, line 22.) There, as here, no other instruction was requested or offered, and no objection to the explanation, as given, was made. (Cf. cases cited in *Osborne,* supra, particularly United States v. Cros-

2. Davenport also, at this time, seeing his former wife in the elevator, and the elevator door closing, hit the wall and "glass" in the corridor, cutting his hand. When the trial judge asked him about how this event occurred, Davenport said: "I walked out of this courtroom and I recognized a person that I saw in the hallway and I got mad at myself for putting this particular person in the predicament that I had put them in (sic) by my false claim I had made on income tax returns, so I just blew my stack."

"THE COURT: You were mad at yourself?
"DEFENDANT DAVENPORT: Yes, sir.
"THE COURT: What did you do?
"DEFENDANT DAVENPORT: I just turned around and hit the wall and that didn't satisfy me, and I hit it again, and consequently, I hit a glass." (R. T., Vol. 7, p. 318.)
Presumably the person seen by Davenport was his former wife.

by, 294 F.2d 928, 948 (2d Cir. 1961) and Davenport v. United States, 260 F.2d 591 (9th Cir. 1958).)

(b) A further prejudice is charged by appellant because of the joinder of the twelve counts against four defendants. Such a joinder of both defendants and offenses is permitted by Rules 8(a) and (b), Federal Rules of Criminal Procedure. A severance was originally denied as to all defendants; then a second motion granted as to codefendants Escarrega and Holley (who subsequently pleaded guilty); then Davenport pleaded guilty, and the trial proceeded as to appellant alone—a result which was precisely what appellant sought by his earlier motion for a severance.

 The joinder of the twelve counts, reduced in number by Escarrega's and Holley's plea, was not improper.[3] Counts I and II, on which appellant was convicted, charged him alone with the two crimes. The jury disagreed only on counts which charged appellant with conspiring with other codefendants. The inference is that they weighed the evidence against appellant alone, uninfluenced by the codefendants' actions.

A red herring appears by inference in appellant's brief at this point. (Opening Brief, p. 45.) Appellant, a lawyer, and one who by reason of his careful references elsewhere in his many briefs and motions to the record, is thoroughly aware of the necessity and value of specific references to the record, on any appeal, states, *without reference to the record or any exhibit,* that Davenport confessed his participation in the appellant's fraudulent schemes. *Without saying* such alleged confession implicated appellant, the latter states it "was relative to charges wherein defendant Morgan was on trial." He then quotes good law to the effect that a confession, implicating a codefendant, may be received in evidence only as to the party making the statement. In the absence of a charged conspiracy, this is good law, but here (i) no reference to the specific statement is made; (ii) no reference to any language implicating appellant is made; (iii) no reference to any objection or requested instruction is made, and (iv) no reference to any other portion of the record before us is made. Under such circumstances the bald assertion made by appellant remains a red herring, and nothing more. The 1966 amendment to Rule 14 of Rules of Criminal Procedure has no significance.

(8) *Denial of a new trial.*

 Appellant next urges as error the denial of his motion for a new trial. He urges the unique theory that the government failed to prove the offenses charged in Counts I and II, because, he infers, conceding (a) the earnings which he reported were false; (b) that his alleged wife for whom he claimed an exemption had been long divorced; (c) that his Social Security number was false; (d) that the corporation named as his employer did not exist; and (f) that the alleged withheld taxes were not withheld; he had merely asked the government to use such false figures and for it to figure out the tax he owed and compute the alleged refund due him—hence "the Internal Revenue, not defendant Morgan, arrived at the conclusion that Morgan was to receive $444.11. Therefore appellant claims he is blameless for the amount refunded him." (Opening Brief, p. 46.)

We need say nothing more about this argument than that it does not appeal to us. We reject it as proof of error. Needless to say, no law is cited to sustain this unusual theory.

(9) *Due process.*

Appellant's last point is that he was denied due process by unnecessary delay in the preparation of the record on appeal.

---

3. A motion to sever "is addressed to the discretion of the District Judge. Such a motion is rarely granted." Davenport v. United States, 260 F.2d 591, 594 (9th Cir. 1958).

Here "no very strong or cogent reason" for severance was urged. Dowdy v. United States, 46 F.2d 417, 421 (4th Cir. 1931), Shockley v. United States, 166 F.2d 704 (9th Cir. 1948), cert. den. 334 U.S. 850, 68 S.Ct. 1502 (1948).

There is absolutely no merit in such a contention. The Appellee's Brief, pages 36 and 37, adequately discloses the many motions made by appellant between July 13, 1961 and June 28, 1965, to augment and change the record.[4] As we

4. "Appellant's motion for:

| | |
|---|---|
| 1. Reporter's transcript of oral proceedings for September 22, 1960 and September 23, 1960 | Record on appeal: Filed with Supplemental Record of December 21, 1966. |
| 2. All Government exhibits | Contains all Government exhibits which were introduced in evidence, except the following: No. 3. Escarrega tax return—1957 No. 4. Escarrega tax refund check—1957 No. 6. Holley tax refund check—1957 No. 29. Tinsley 1956 tax return No. 90. Appellant's prison correspondence record. |
| 3. All defendant's exhibit (sic) | Are in record on appeal, except for Defendant's Exhibit J, which was not received in evidence. |
| 4. All written motions filed | On file in record on appeal. |
| 5. All exhibits pertaining to Counts I and II | All defendant's exhibits are on file except No. J, which was not received in evidence. Government exhibits pertaining to Counts I and II which were received in evidence were Nos. 1, 2, 7, 10, 11, 12, 13, 14, 35, 36, 37, 63, 64, 65, 78, 79, 81, 84, 87, 88, 89, 90 and 91. All of these are in the record on appeal, No. 90, as explained above. |
| 6. September 8, 1960, writ of habeas corpus ad prosequendum | Supplied on January 30, 1967 by appellee. This writ was not part of the record in this case, but in a preceding indictment. |
| Appellant's motion for: 7. September 15, 1960, writ of habeas corpus ad prosequendum | Record on appeal: No such writ discoverable. On September 9, 1960, the District Court ordered the Warden to produce appellant again on September 15, 1960, which would indicate no writ necessary or issued. |
| 8. February 6, 1961, writ of habeas corpus ad prosequendum | No such writ issued. This was the return date for the writ issued January 17, 1961, which is in the record on appeal." |

(Appellee's Brief, No. 17,245, pp. 36–37.)

have pointed out, supra, such motions are still being made by appellant, even after the hearing date of this appeal, and after the two cases were placed under submission by this court on April 17, 1967.

## VII

Finding no error, we affirm the judgment of conviction of appellant on each of the two counts in case No. 17,245.

We turn to case No. 19,293. Appellant charges the following errors, each of which will be considered in turn:

## VIII

(1) *That appellant was tried on December 4, 1962, but was not given a copy of the indictment filed against him until December 3, 1962.*

This point illustrates the difficulty in attempting to meet various charges of error made without restraint by appellant as representations of fact, irrespective of their truth, so long as a possibility exists the point might favor him.

When this technical point was first urged by appellant, the entire record was not before the court. Finally, when the Fourth Supplemental Reporter's Transcript was prepared and filed, it disclosed clearly (page 4, lines 8 and 9) that a copy of this arraignment was served on the appellant in open court on May 21, 1962.

In his Opening Brief, appellant represents to this court that he never saw the indictment until December 3, 1962. Relying on Rule 10 of the Fed.R.Crim.P., he strongly urges this as a reason for reversal. He filed his brief on September 19, 1966. On January 23, 1967, the "Fourth Supplemental Transcript of Record" was then filed by the government. It establishes convincingly that appellant's factual presentation on this point is false. When confronted with such proof, appellant does not even propose to argue the matter on his "Oral Argument Hearing Memorandum," filed by him on April 13, 1967.

It is such changes of position on appellant's part that make this appeal difficult to analyze in an orderly manner. It is sufficient to state here that appellant's first alleged error is based on a false factual assumption; and is without merit.

(2) *Denial of a Bill of Particulars.*

Appellant's second alleged error was the court's denial of his motion for a Bill of Particulars. This denial, on September 24, 1962, was, says appellant, an abuse of discretion.

A similar motion was made May 3, 1962, and denied. In it, appellant had asked for nothing specific. At the trial, the government proposed to go into other acts of a similar nature (filing false claims at the Internal Revenue Office in Baltimore) to show appellant's "intent," or a "previous similar course of conduct." Appellant objected that the government was endeavoring to prove other and different crimes than those charged against appellant. The trial judge chided the government for having previously opposed appellant's motion for a Bill of Particulars, and subsequently offering evidence of similar crimes on the theory of intent. (R.T., pp. 135, line 14 to 137, line 5.)

None of this proves that the trial judge abused his discretion in denying a Bill of Particulars. It shows a disposition on his part to protect the defendant's interests.

No objection was made to Government Exhibit 9, "Exemplars of Royal Standard Typewriter located at Hospital, Wayside Honor Rancho, Castaic, California," and it went into evidence. (R.T. p. 28.) The appellant's objections went to the following exhibits:

Ex. 7. Tax refund check of defendant.

Ex. 8. Tax refund check of defendant.

Ex. 10. Exemplars of typewriting of Smith-Corona typewriter owned by Dr. Arzoo, Physician, Wayside Honor Rancho, Castaic, California.

Ex. 11. Photostatic copy of William G. Steinhoff's Income Tax Return for 1959.

Ex. 12. Income Tax Return of R. Evans Morgan, 1250 Magnolia Street, Los Angeles, California, for 1959; Soc. Sec. #553–23–4456; Employer, Maryland Auto Wrecking Co., Md.

Ex. 13. Income Tax Return for Robert E. Morgan, 1250 Magnolia Street, Los Angeles, California, for 1959; Soc. Sec. #299–28–3353; Employer, U. S. Navy.

Ex. 14. Income Tax Return for Robert B. Morgan, 1250 Magnolia Street, Los Angeles, California, for 1959; Soc. Sec. #104–20–4458; Employer, Chavez Ravine Development Co., Los Angeles, California.

Ex. 15. Income Tax Return for Michael Jason for 1959, Soc. Sec. #106–12–4356; Employer, Sunset Roofing Co., Los Angeles, California.

Ex. 16. Income Tax Return for William T. Adams for 1959, Soc. Sec. #107–20–4436; Employers, Anderson Lumber Co. and Spaulding Tire Co., Los Angeles, California.

All were offered to show defendant's similiar actions, and his intent. The court allowed them to be marked for identification only. (R.T. pp. 128–140.) Subsequently, they were all, save two, placed in evidence (R.T. pp. 317–321) to show *intent* only.[5]

Without citing any cases in an attempt to demonstrate that proof of intent or previous similar acts are error, appellant urges that a Bill of Particulars would have disclosed the government's reliance on similar acts, and hence its denial was error. We cannot agree. There was no abuse of discretion. The motion for a Bill of Particulars was not specific in its demand, as it must be. United States v. Hudson, 176 F.Supp. 327, 328 (M.D.Ga.1959), United States v. Callahan, 18 F.R.D. 486 (W.D.Wash. 1956). It does not entitle a defendant to explore at will all evidence the government may hold against him. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927), Yeargain v. United States, 314 F.2d 881, 882 (9th Cir. 1962), Rodella v. United States, 286 F.2d 306, 310 (9th Cir. 1960).

(3) *Motion for Discovery and Inspection.*

Error is alleged in the denial of appellant's Motion for Discovery and Inspection, filed July 25, 1962, under Rule 17(b) and (c) (subpoenas) and 18 U.S.C. § 3500 (Jencks Act) (C.T. p. 18).

Appellant on this appeal blandly changes his position, and asserts the motion was made under Rule 16 (Opening Brief, p. 10). It was not. This is a second false statement in his brief.

Appellant requested three things:

(a) Certain "Grand Jury Testimony relating to Income Tax Returns and claim in names of Wm. T. Adams, William G. Steinhoff, Robert E. Morgan, Michael Jason, John Doe, Internal Revenue Special Agent, Los Angeles Office";

(b) Statements made by appellant and his codefendant Maximillian B. Michelson; and

(c) Statements of prospective government witnesses.

The government offered and agreed to make available to appellant any statement he had given to any United States investigating agency, but declined to give statements of other witnesses, relying on the exclusionary provisions of 18 U.S.C. § 3500:

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpoena, discovery, or inspection until said wit-

---

5. Ex. 14, p. 317. to show intent only.
 Ex. 15, p. 318, to show intent only.
 Ex. 16, p. 318, as to Count II.
 Ex. 13, p. 319, to show intent only.
 Ex. 12. p. 320, to show intent only.
 Ex. 7, p. 321. to show intent only.
 Ex. 8, p. 321, to show intent only.
 Ex. 11, p. 324, to show intent only.

ness has testified on direct examination in the trial of the case."

■ The government was required to go no further than it did. No case is cited by appellant to indicate it should have. There was no error in this respect.

(4) *Appellant urges that when he was taken from state's prison to the federal court to stand trial for a federal crime by means of a federal writ of habeas corpus ad prosequendum, he became a federal "prisoner" entitled to bail before trial.*

This point has no merit. (See VI, subdivision (5), supra.) Appellant urges that only an application filed by him, or someone in his behalf authorizes the issuance of a writ of habeas corpus ad prosequendum. Appellant recognizes the existence, but denies the authority, of 28 U.S.C. § 2241, and particularly subdivision (c) (5) thereof:

"(c) The writ of habeas corpus shall not extend to a prisoner unless—
* * *

(5) [i]t is necessary to bring him into court to testify or for trial."

■ The writ of habeas corpus ad prosequendum is proper to bring a prisoner under incarceration by state or federal court to trial for alleged violations of laws. United States ex rel. Moses v. Kipp, 232 F.2d 147 (7th Cir. 1956), Gilmore v. United States, 129 F.2d 199 (10th Cir. 1942), cert. den. 317 U.S. 631, 63 S.Ct. 55, 87 L.Ed. 509 (1942). This is the inherent power of the court. United States v. McGaha, 205 F.Supp. 949 (E.D. Tenn.1962). See also Carbo v. United States, 364 U.S. 611, 81 S.Ct. 338 (1961).

Trial and sentence by federal court of a state prisoner brought before a federal court by a writ of habeas corpus ad prosequendum has long been standard procedure, the propriety of which has not been open to question by the prisoner. United States v. Schurman, 84 F.Supp. 411 (S.D.N.Y.1949). Cf. also, Price v. Johnston, 159 F.2d 234 (9th Cir. 1947) and Strand v. Schmittroth, 251 F.2d 590,

610, n. 60 (9th Cir. 1957), cert. dismissed 355 U.S. 886, 78 S.Ct. 258, 2 L.Ed.2d 186 (1957). See also, Carbo v. United States, supra, 364 U.S. p. 612, n. 1, 81 S.Ct. 338.

■ The United States Marshal was required to return the prisoner to a state penal institution. Under such circumstances, both common sense and the doctrine of comity require that the state prisoner not be released by the federal authorities on bail.

As this court said in Strand v. Schmittroth, supra, 251 F.2d at p. 595:

"Actual consent of one sovereign, whether express or implied, to proceeding in another forum wipes out all distinctions and is conclusive of all questions. If consent can be found, there need be no search for other or better grounds. Abstruse reasoning into bases of jurisdiction and similar difficult propositions is avoided."

And see cases cited in note 9, 251 F.2d at 595.

We hold the district court properly denied appellant's release on bail.

(5) *Bias and prejudice.*

Appellant next urges that the court erred in refusing to disqualify itself upon grounds of bias and prejudice.

Appellant urges that the trial judge "helped the government to prosecute their case." The trial judge's criticism of government counsel's presentation of the case was little help to the government. An examination of the entire Reporter's Transcript demonstrates the charge is absurd, and merits no further consideration by this court.

■ Unfavorable rulings by the trial court may constitute grounds for reversal if they amount to error, but do not constitute nor demonstrate his "bias and prejudice." Deitle v. United States, 302 F.2d 116 (7th Cir. 1962). See also, Barkan v. United States, 362 F.2d 158, 160 (7th Cir. 1966). Cf. also, Barnes v. United States, 241 F.2d 252, 254 (9th Cir. 1956).

(6) *Aid in preparing appeal.*

Appellant urges a denial of his constitutional rights exits in that the court refused to order law books and legal documents to be made available to defendant in jail.

In support of this alleged error not one case is cited in appellant's Opening Brief, in his first Traverse Brief nor in his Supplemental Brief. Long selected portions of the record are presented to this court, most of it argument advanced by appellant below, and none of which tells the entire story. We have read the record and are convinced the trial judge did all in his power to insist that defendant should be represented by counsel. This appellant refused. When the court appointed counsel, appellant (as he admits) rejected the appointment of any attorney.

In his Opening Brief, appellant states he filed, on July 25, 1962, a "Motion for an Order to be directed by the court authorizing and allowing defendant to have in his possession at the jail law books and legal documents essential to the preparation of his defense." He makes no reference to where in the record this motion may be found. The district court rules require any such motion to be in writing. Southern District of Calif. Rule 3(d). After a diligent search of the Clerk's Transcript, including the Second, Third and Fourth Supplemental Transcript, we find no such motion was ever made or filed. We do find that there was "Lodged" *a proposed "Order"* on July 25, 1962, which was unfiled, undated and unsigned. (Second Supplemental Transcript of Record, p. 1.) We also find a letter from the clerk of the district court to the clerk of this court, dated September 26, 1966, which states the only document relating to such a motion is defendant's proposed order, *lodged,* but not filed. Neither the Third nor Fourth Supplemental Transcript of Record refer to any such motion, nor do the sixteen Minute Orders appearing in said Third Supplemental Transcript of Record.

We cannot pass on matters which do not appear in the record before us. So far as the record discloses, nowhere did the appellant raise, or the court pass upon, the alleged motion; nor did either the court or the appellant, subsequent to July 25, 1962, raise any issue as to the lodging, rather than the filing, of the proposed order.

We realize that appellant will urge, as he has in his "Supplemental Brief (sic)," (filed January 31, 1967) that "the government has failed to prosecute a timely appeal," or to furnish appellant with all portions of the record he subsequently decides he needs or wants. But he here asks us to act on a portion of the record which allegedly exists, but where there is no evidence of its existence in the record. We refuse to do so.

(7) *Motion for Mistrial.*

In appellant's Opening Brief, the error here alleged is that the court abused its discretion in denying appellant's motion for a mistrial.

This motion was made on the second day of trial. On the first, codefendant Michelson had withdrawn his plea of not guilty on all counts charged, and entered a guilty plea of two counts, IV and VI.

Appellant stated his motion as follows:

"Now, for a day I sat at counsel table speaking for myself as the only defendant before the jury. On several occasions Mr. Keller has referred to the co-defendant, co-conspirator, but the jury views only Morgan sitting here with the Sheriff's Department and the government opposing him.

I feel that the fact that the court did take two pleas of guilty and did not dispose of the other four counts as to the defendant Michelson, that in all legal aspects of this trial Michelson has been on trial for the four counts that have not been dismissed. But he has

not been at counsel table. I feel this is highly prejudicial to myself because I am viewed here by the jury as the sole person.

Because of all this and because of new information that has been brought before the court this morning I feel that I am in line in making a motion for mistrial based upon this situation. I submit that to the court." (R.T. p. 155, lines 8–23).

There then followed thirty pages of testimony as to Mr. Michelson's plea (R.T. pp. 155–185) to determine if he had been given any immunity or reward, or promise of immunity or reward. The court found he had not.

The record fails to disclose that the court ever ruled on defendant's motion; or that defendant ever pressed a request for a ruling.

Appellant cites in his Opening Brief no case in support of his position. In his First Traverse Brief and his First Supplemental Brief, he cites Riggs v. United States, 280 F.2d 750 (5th Cir. 1960). There, in a holding that is pure dictum, the court stated that *if* the district court actually failed to exercise its discretion in that respect (whether to grant or deny a motion for mistrial) a vacation or reversal of its judgment would be required.

The court of appeals in *Riggs*, supra, *specifically* states the two errors upon which it reversed the trial court. They were:

"First, the Government produced two surprise witnesses [who testified to a transaction] known to the Government, [which] was in no way referred to among the overt acts of the alleged conspiracy or in any other way in any count of the indictment." (280 F.2d at 753.)

The court denied the motion for mistrial under an erroneous belief in the law. "Assuming, however, that the court did exercise its discretion to deny the mo-

tion for mistrial, we find no abuse of discretion." (Id. at 754.)

Second: proof was introduced "that another jury had recently found defendant guilty of a different but unspecified felony," which case was then on appeal and not final. (Ibid.) "For the errors indicated, the judgment is reversed and the cause is remanded." (Id. at 755.)

██ The trial court should have exercised its discretion, and appellant should have made a record if it refused to do so. But the court was never again asked, and never refused, to exercise its discretion. On the whole record, the error alleged is so insignificant that if it could be held error, we have no hesitation in characterizing it as harmless error (Rule 52(a), Fed.R.Crim.P.), and we do so hold.

(8) *Certified copies.*

The next error urged by appellant is the introduction of Government's Exhibits 21, 22 and 23.

Appellant refers to Exhibit 21 as a "Certificate from the Department of the Navy." (R.T., p. 305, discloses that the Certificate from the Secretary of the Navy was Ex. 23.)

(a) Exhibit 23 states the enlisted personnel diaries of the U.S.S. Piedmont (AD-17) fail to disclose any diary entries pertinent to the on-board status of Robert E. Morgan. It was certified by Vice Admiral Loomis, Chief of Naval Personnel, as "a true statement of the non-service of Robert E. Morgan as shown in the personnel diaries of the U.S.S. Piedmont (AD-17) during the year 1959. * * *" There was a further certification, under seal, for the Secretary of the Navy, by the Acting Judge Advocate General to the authenticity of the Chief of Naval Personnel's certificate.

Exhibit 13 discloses that one Robert E. Morgan, for the year 1959 (when Robert E. Morgan was actually confined in a penal institution), claimed income

received in a certain amount, on Form 1040A, and that the employer he named was "U.S.S. Piedmont AD-17 U.S. Navy."

(b) Exhibit 22 was a group of photostatic copies of applications (Form SS-5) for social security numbers, or for changes in social security numbers, then in the files of the Department of Health, Education and Welfare of the United States.

They were certified as true copies under the seal of that Department, and by the Secretary to the Associate General Counsel of that agency, "pursuant to the provisions of § 623d, Chapt. 11 A, Title 5 of the United States Code, and the authority vested in me by the Secretary (24 F.R. 8612). * * *"

When Morgan allegedly filed his false Form 1040A for 1959 income tax refund, he gave as his Social Security Number 299 28 3353 Exhibit 22 disclosed that Social Security Number 299 28 3353 had been issued in 1951 to one Harry Jack Blasberg of Cleveland, Ohio.

Exhibit 22 disclosed the social security number used to obtain a 1959 refund (Ex. 15) was not issued to Michael Jason (an alleged employee of Sunset Roofing Company of Los Angeles, California), but belonged since 1952 to Maggie V. Gantt of New York, N.Y.

Exhibit 22 also disclosed that the Social Security Number 107 20 4436 claimed for William T. Adams, allegedly employed by Anderson Lumber Company and Spaulding Tire Company in Los Angeles, California (Ex. 16), was issued to Jerome Sidney Berg of Brooklyn, N.Y. All other social security numbers referred to in Exhibit 22 were material to some evidence and issue in the case.

(c) Exhibit 21 was a certificate from the Director of Department of Employment of the State of California, and disclosed that none of the various alleged employers named in the alleged false refund claims were ever registered as employers under the California Unemployment Insurance Code, namely:

Chavez Roofing Development Co., Los Angeles

Sunset Roofing Company, Los Angeles

Anderson Lumber Co., Los Angeles

Spaulding Tire Company, Los Angeles

Anderson Finance Company, Los Angeles

Again, all the alleged employment by these alleged employers of alleged employees claiming refunds was material to some evidence and issue in the case.

A weak objection was made by appellant. (R.T. p. 306.) Reference is made in his briefs to Communist Party of United States v. Subversive Activities Control Board, 102 U.S.App.D.C. 395, 254 F.2d 314 (1958). It is not in point.

■ All such documents were clearly admissible either by Rule 44(b) or Rule 44(a) (1) of the Federal Rules of Civil Procedure, and Rule 27 of the Federal Rules of Criminal Procedure.

### IX

■ Appellant urges there was insufficient evidence to convict him. It would be rare to find a case where more evidence of appellant's violation of law exists. The evidence is ample to convict.

### X

■ Appellant urges that returning the jury for further deliberations, after it had found a verdict on one count, but not on the second, was error. (Cf. R.T. p. 455 et seq.)

No objection was made at the time by appellant. (Rule 30, Fed.R.Crim.P.) The court was careful to indicate he was not forcing a verdict for or against the defendant. He committed no error.

### XI

■ Appellant now objects that the trial judge advised the jury he had granted a verdict of acquittal to appellant as to Counts I, II and V.

The court properly instructed the jury on this matter. (R.T. p. 435, line 22 to p. 436, line 22.) The entire instructions, taken as a whole (R.T. pp. 421–443), were fair to each side. The best proof of this was the fact the defendant made no objection when this subject was touched upon, and had no objection to make when all instructions were finished. (R.T. p. 443, lines 2–5.) Appellant did ask for an "accomplice" instruction, which the court felt was unnecessary, but gave it. Again the appellant, then defendant, stated he was satisfied. (R.T. p. 444.)

We find no error, but if any existed, it was waived. (Rule 30, Fed.R.Crim.P.)

### XII

■ Appellant urges the admission of Exhibit 11, a certified copy of a lost or misplaced document, was error.

Unless there was a failure to satisfactorily identify the document, the "reproduction * * * is as admissible in evidence as the original itself in any judicial * * * proceeding, whether the original is in existence or not * * *." 28 U.S.C. § 1732(b).

The court's ruling admitting the photostatic copy of government form 1040A (Ex. 11) was correct.

### XIII

■ Appellant urges that the court permitted the government to reopen the case so as to prove venue, after the defendant's motion to acquit. This is clearly a matter involving judicial discretion. It was not abused, and we find no error. Haugen v. United States, 153 F.2d 850 (9th Cir. 1946).

Appellant urges the procedure allowed is "like allowing the government to reopen their case after a verdict of not guilty." That involves a verdict of acquittal, and hence jeopardy. This does not.

### XIV

Appellant urges the denial of his motion for a new trial was error, because of all the errors hereinbefore detailed, i. e., the "totality of errors." We have found no error sufficient to reverse, and find no totality of harmless error which calls upon us to set aside a fair conviction.

Appellant's Supplemental Brief raises three other alleged errors not touched upon above, which we should mention.

### XV

■ Appellant asks the judgment of conviction be reversed because the court "should have furnished appellant with a copy of instructions it was going to give the jury."

Rule 30, Fed.R.Crim.P., requires the judge to advise counsel what instructions they have proposed that he will not give, but nothing more. No copy of instructions are required to be given anybody by the judge. We find no error.

### XVI

■ Error is charged that the witness Steinhoff was not called. He was available, if living, to either side. Appellant asserts the government was *required* to call him, but cites no case to support his theory, and we know of none.

### XVII

■ Appellant claims he was charged under the wrong statute (18 U.S.C. § 287) and that he should have been charged under 18 U.S.C. § 1001. The two sections define different crimes, cf. United States ex rel. Marcus v. Hess, 317 U.S. 537, 540, n. 2, 63 S.Ct. 379, 87 L.Ed. 443 (1943), and the government has the right to sue under any statute under which it thinks it can secure a conviction. Again, appellant cites no cases in support of his position. We find no error.

Finding no error in any of the matters raised by appellant in No. 19,293, we affirm the conviction on each count.